Eastern District.
*May*, 1830.    *LOUISIANA BANK vs. KENNER'S SUCCESSION.*

LOUISIANA
BANK
*vs.*
KENNER's SUC-
CESSION.

Whether stipulations in contracts of partnership, by which they may be continued after the death of one of the partners, for the benefit of his heirs, be binding on the latter, without their consent? *Quere.*

According to the laws and usages of commerce, as they prevailed at the time of the adoption of the Code of 1808, no stipulation could be made by partners, absolutely binding on the heirs of one of them who should die, to continue the partnership after his death, and be made responsible for contracts made in the partnership name.

APPEAL from the court of probates, of the parish of Orleans.

This was an action to recover from the estate of William Kenner, deceased, twenty-nine thousand seven hundred and sixty-six dollars and twenty-six cents, being the amount of three promissory notes, drawn by the commercial firm of William Kenner & Co. to the order of Morgan, Dorsey & Co. and by them endorsed to the plaintiffs.

The defence set up, was, that the partnership of William Kenner & Co. was dissolved by the death of Kenner, prior to the execution of the notes, and that after his death, the surviving partners were bound to liquidate the partnership as soon as possible, and had no right by law or otherwise, to enter into any new contract

in the name of said partnership, so as to bind or affect the estate of the said William Kenner.

Eastern District.
*May*, 1830.

LOUISIANA
BANK
*vs.*
KENNER'S SUC-
CESSION.

It appeared from the evidence, that, on the 5th May, 1824, the partnership which had previously existed between Kenner, Clague and Oldham, under the firm of William Kenner & Co. was continued for the period of three years, and in the articles of copartnership *then* entered into between the said partners, was the following clause. "Should any one or more of the said partners die before the period stipulated for the ending of said partnership, such death or deaths shall not operate a dissolution of the same, in any manner whatever; but the same shall continue until the expiration of the said period, between the surviving partner or partners, and the heir or heirs of such deceased partner or partners; and the said surviving partner or partners shall, and may continue to use the name of said firm as now established; to remain in possession of and sell, negotiate and disposed of and generally to administer all the property, moveable and immoveable; all the effects, moneys, rights, credits and debts, and other means thereof, in the same manner as if the said parties were all living, until the expiration of the said period, and to wind up

Eastern District.
*May*, 1830.

Louisiana
Bank
*vs.*
Kenner's suc-
cession.

and liquidate the affairs of said partnership, and render an account thereof, when thus liquidated to the heirs or representatives of such deceased partner or partners."

It was admitted that William Kenner died, on the 14th of May, 1824, leaving six children, all minors; and that the notes sued upon, were dated in 1825. There was judgment for the defendants, and the plaintiffs appealed.

*Livermore*, for appellants; *Mazureau*, for appellee.

MATHEWS, J. delivered the opinion of the court.

In this case, proceedings were commenced in the court below, to recover from the succession of the deceased, the sum of twenty-nine thousand seven hundred and sixty-six dollars and twenty-six cents, on account of several negotiable notes purporting to have been executed and signed by the commercial firm of William Kenner & Co. The defence, on the part of the succession, is a dissolution of the partnership, previous to the making and signing of the notes in its name, by the death of Kenner. The court of pro-

bates gave judgment against the claim of the plaintiffs, from which they appealed.

Eastern District.
*May*, 1830.

LOUISIANA
BANK
*vs*
KENNER'S SUC-
CESSION.

The evidence of the case, and facts admitted, show, that a commercial partnership had existed between William Kenner, Richard Clague and John Oldham, carrying on trade under the name and firm of William Kenner & Co. up to the 5th of May, 1824; which was at that date continued by agreement, entered into between the partners, for the space of three years thereafter. On the 14th of the same month Kenner died, leaving six children, all minors. The notes of which the plaintiffs claim payment from his succession in the present action, bear date in the year 1825, after his death; and were executed in relation to new contracts, made by the surviving partners, who used the partnership name in signing them, in consequence of power to that effect, given by the terms of the 7th art. of the contract, by which the partnership was continued. It is expressed in the following words. "Should any one or more of the said partners die, before the period stipulated for the ending of the said partnership, such death or deaths, shall not operate a dissolution of the same, in any manner

Eastern District.
*May,* 1830.

LOUISIANA
BANK
*vs.*
KENNER'S SUC-
CESSION.

whatever, but the same shall continue until the expiration of the said period, between the surviving partner or partners, and the heir or heirs of such deceased partner or partners; and the said surviving partner or partners shall, and may continue to use the name of said firm as now established; to remain in possession of, and sell, negotiate and dispose of, and generally to administer all the property, moveable or immoveable, all the effects, moneys, rights, credits and debts, and other means thereof, in the same manner as if the said partners were all living, until the expiration of the said period; and to wind up and liquidate the affairs of the said partnership, and render an account thereof, when thus liquidated to the heirs or representatives of such deceased partner or partners."

The 8th art. requires, that efforts should be made to bring the concerns and dependencies of the partnership *into as narrow a compass as possible* before the period at which it was to close. Profits and losses at its termination were to be taken into account, from the 1st day of December, 1820, until the time limited for its duration, &c.

According to these stipulations, the coun-
sel for the appellants contended, that the sur-
viving partners had a right to use the name
and style of the firm in transacting commercial
business to any extent that they might deem
proper, and that the heirs of William Kenner,
the deceased partner, are bound *in solido*
with the survivors, by all notes or other in-
struments in writing, executed in the partner-
ship name, in pursuance of the contract by
which it was continued, although such busi-
ness may have been transacted, and the name
signed to the notes, &c. since the death of
their father.

In support of this proposition, reliance is
had on the Old Civil Code, and on the com-
mercial laws or usages of England, of Scot-
land, of the United States, of France, of
Holland, of Germany, and those which have
been understood as existing in Louisiana.

We have examined the authorities cited, to
show the laws and usages in these foreign go-
vernments, in relation to questions analogous
to that which is now under discussion; and
they seem to authorize stipulations in con-
tracts of partnership, by which they may be
continued after the death of one of the part-

Eastern District.
*May*, 1830.

LOUISIANA
BANK
*vs.*
KENNER'S SUC-
CESSION.

Whether stipulations in contracts of partnership, by which they may be continued after the death of one of the partners, for the benefit of his heirs, be binding on the latter, without their consent? *Quere.*

ners, for the benefit of his heirs. But whether they would be binding on the latter, without their consent or acquiescence, is perhaps doubtful. In relation to minors, to whom the law does not attribute the power of willing, or consenting, the principle contended for by the appellants, would involve great difficulty, if not legal absurdity in their consequences. Heirs are bound to discharge the obligations of their ancestors, contracted by the latter while living, to the extent of the property which they inherit. But the power of an ancestor, (particularly according to our laws, relating to forced heirs,) to confer a right on other persons to make contracts after his death, by which his heirs should be bound even in reference to property inherited, to say the least of it, is very doubtful on general principles of law and justice.

In opposition to the consequences and effects assumed by the plaintiffs as giving them a right to recover the sum claimed from the heirs of Kenner, under the provisions of the *Old Civil Code,* as laid down in *art.* 50, *p.* 400. The counsel for the latter relies on *art.* 61, found on the same page, and on the

laws of Spain, relating to commercial part-
nerships. He insists, also, that a just and pro-
per interpretation of the contract of partner-
ship, will restrict the power of the surviving
partners to mere acts of administration of the
property, credits and debts, which appertain-
e l to it at the time of the death of the prin-
cipal partner; and that his intention as evi-
denced by the contract of the two last articles
of the agreement was to continue the survi-
vors in the exercise of the powers granted
for the sole and only purpose of winding up
and settling the affairs of the concern, and
not to enter into new and extensive transac-
tions. After a strict examination of all the
words and clauses contained in these articles,
we have, (although not without hesitation,)
come to the conclusion that they did autho-
rize the surviving partners to contract new
obligations in the name of the firm as it stood
previous to the death of Kenner, and that the
acts in this respect are obligatory on his heirs,
if it be admitted that he could legally consti-
tute them his successors in the partnership.
And this compels us to enter into an investi-
gation of the legal principles adduced in sup-
port of the claim, and those which are offer-
ed to destroy it.

Eastern District.
*May*, 1830.

LOUISIANA
BANK.
*vs.*
KENNER'S SUC-
CESSION.

Eastern District
*May*, 1830.

Louisiana
Bank
*vs.*
Kenner's suc-
cession.

We have already noticed, in a slight man-
ner, the laws of foreign states, and which
may perhaps be considered as somewhat fo-
reign to the present question, and giving but
little aid in its decision. We will now exa-
mine those which have immediate relation
to it.

By *art.* 50 of the *Code* above cited, it is
declared that every partnership ends of right
by the death of one of the partners, unless an
agreement has been made to the contrary.
According to *art,* 61, such a dissolution ex-
tends to the surviving partners, unless there
be a contrary stipulation. In case of a con-
tinuance between the survivors, *art.* 52 pro-
vides for the rights of the heirs of the deceas-
ed partner. These rules are found in the *ti-
tle of the Code* which treats of the different
manners in which partnerships end. And *art.*
61 declares that its provisions apply to com-
mercial partnerships, inasmuch only as they
do not contain any thing contrary to the laws
and usages of commerce.

If the laws and usages of commerce which
were in force in this country at the time of
the adoption of the *Code* of 1808, contained
rules contrary to those expressed in the *Code*

in the title from which these articles have been extracted,the former laws must govern, should any effect be given to the *art.* 61. Considering its provisions in comparison with those of *art.* 50, as creating an antinomy, the last *art.* 61, must prevail, on the rules of construction that prior laws are abrogated by posterior, which may be properly extended to different clauses in the same law.

We must now enquire what were the laws and usages of commerce in relation to commercial transactions, and particularly as to their effect on partnerships of this nature,which governed in this territory or state, at the period when the *Old Civil Code* received legislative sanction.

Soon after the second grade of government was conferred on the territory of Orleans, and the ordonnance. of 1787, which had been made for the government of the territory of the United States north-west of the river Ohio had been extended to it, a dispute arose as to the laws which should be considered in force in this country.

In conformity with the fourth section of the act of congress, of the 2d March, 1805 pro viding for its government; and in pursuance

Eastern District.
*May*, 1830.

LOUISIANA
BANK
*vs.*
KENNER'S SUC-
CESSION.

of a general *principle of* the law of nations, that the former civil laws are retained by the inhabitants of a ceded state or province, until altered, modified or repealed by the legislative power of the government which has acquired the country; it was decided that the Spanish laws were to be regarded as affording rules for the settlement of civil contests between the citizens of the territory, so far as they were not incompatible with the political regulations of the United States, and were unrepealed by any authority. This decision has been acquiesced in ever since, and the laws of Spain have been considered as the laws of this state in relation to civil suits, until their entire abrogation in 1828 by an act of our legislature.

To show that the stipulation contained in the 7th article of the agreement to continue their partnership, made between Kenner, Clague and Oldham, is *not binding* on the part of the former, we are referred to the laws 1 & 15, *tit.* 10, *Partidas* 5. The first of these laws defines a company, or partnership, to be an union of men for the purpose of gain; formed by consent and agreement of those who desired to become partners. It

may be made for a certain time, or for the whole life of the partners *Pero si algunos fazciessen compania entre si, tambien por ellos, como por sus herrederos valensi a quanto en su vida dellos, mas non passadas à sus herrederos, &c..*

The law 10, declares a partnership to be dissolved by the death of one of the partners, or by some other occurrences, much in conformity with the provisions of the *Old Civil Code*, and authorizes a stipulation for a continuance between surviving partners.

If the law which imposes this incapacity on partners to continue a partnership beyond their own lives, in such manner as bind their heirs by the contract, be considered as a law or usage of commerce existing at the time the *Civil Code* of 1808 was adopted, it controls article 50, of the title in that work, which treats of the manner in which partnerships end: for unless such an agreement could have been validly made according to the laws and usages of commerce then in force: the contract now under consideration is not binding on the appellees in consequence of *art.* 61 of the title referred to.

Eastern District.
*May*, 1830.

LOUISIANA
BANK
*vs.*
KENNER'S SUC-
CESSION.

It is certainly desirable for the convenience of merchants that the laws and usages which govern commercial contracts, should be similar in the different countries between which a trade of this species is carried on, and more especially is it to be desired that an uniformity in this respect should prevail in commercial business carried on between the states of the Union; and when no express statutory provision, or local usage exists to the contrary, general custom, as established by the decisions of competent tribunals ought to prevail. But no general usage can destroy the force and effect of local regulations, when the latter are formed in opposition to the former. The law of the *Partidas* in relation to partnerships, although it embraces those which may not be, strictly speaking, commercial, yet it certainly includes the latter: in this respect it is a law of commerce, and must be held paramount to the usage of all foreign countries, even those of the other states of our confederacy.

Opposed to the recognition of this principle in the present case, much argument was offered to the court, drawn *ab inconvenienti;* such as that indorsements of bills or notes in

Eastern District.
*May*, 1830.

LOUISIANA
BANK
*vs.*
KENNER'S SUC-
CESSION.

blank, are not good according to the Spanish laws, and that partners are not bound in *solido* by their contracts; principles wholly contrary to the doctrine established by many decisions of the courts of the state. It is true that we have been in the habit of having our judgments relative to commercial transactions, or the usages of commerce, as they prevail in the U. S. and England and other commercial countries. No instance, however, can be adduced where violence has been done to any express provision of the laws of this state in any of these judgments or decisions. With regard to blank indorsements, they are prohibited by the ordonnances of Bilboa, alone, which never had the force of law in this province while under the government of Spain. As to the evil consequences so much apprehended by the counsel for the appellants in relation to the contracts of co-partners being no longer considered as binding in *solido*, their fears for the future may be calmed by the recollection that all the Spanish laws were abrogated by the legislature in 1828. But according to a just interpretation of the rules as cited from the *Curia Philipica*, we are of opinion that there is no

Eastern District.
*May*, 1830.

LOUISIANA
BANK
*vs.*
KENNER'S SUC-
CESSION.

real grounds to apprehend inconsistencies or difficulties in reference to past contracts. These rules are expressed in *No.* 28 and **29**, of the *Chapter* which treats on *compaños.*

In No. 28 it is declared, that when a partner contracts in his own separate name, other partners are not bound by such contract; for, to bind them, it is requisite that the name of the company should be used, and that the contract should be intended for the utility of the partnership. No. 29 is in the following words: " *un compania no pur de obligar a otro, se no es por la parte que le toca respecto de la compannia, salvo haviendo pacte entre illos de ello; ó quando los dos exercera una negociation en diversos pueblos: cada uno en el suyo que entonces, por le que cada uno de ellos negocia, ó contrata quedan intrambos obligados* in solidum, *por que el uno fue puesto por el otrò para ello, y por el contrario. Y lo mismo por la misma razon es quando, el uno es puesto por los demas para una* \ *negociacion. Seguin unas decissiones de Genova, Alvaro Vacq y Morquicho.*

According to this authority, it might appear doubtful whether the signature of the company's name would bind all the partners

in *solidum*, unless it should be signed by Eastern District.
*May*, 1830.

LOUISIANA
BANK
*vs.*
KENNER'S SUC-
CESSION. some particular member authorized by the contract of association to use the name of the firm. But, on looking at the decisions refer- red to, it appears to us the matter is made clear, that an obligation in *solidum* is impo- sed on all the partners, by the use of the *no- men sociale* by any one of them. The moral or summary of the decision No. 15, *Rota Genua*, referred to amongst others by the *Curia Phillipica*, is expressed in these words: *Expendens nomen sociorum obligat quem- libet ipsorum in solidum.* No. 10 of this decision, " *Uno expendente nomen sociale, tam expendens quam cætere socii, in soli- dum obligantur.* No 12 is to the same effect, wherein a distinction is made between con- tracts signed by all the partners in their sepa- rate names, and such as are signed by any one of them. " *Expendens nomen sociale, tunc de mente Bartholi et alionum est, ad omnes socii in solidum obligantur sive in eadem sive in diversa sent civitate.* From these authorities we conclude that partners in a commercial company are, by the laws and usages of commerce, as understood in Spain, bound *in solido* by the signature of the com-

Eastern District.
*May*, 1830.

LOUISIANA
BANK
*vs.*
KENNER's SUC-
CESSION.

pany, when used for legitimate purposes ; and that, supposing these laws and usages to have been in force in this country prior to the year 1828, they did in no manner conflict with those which prevail in the U. States generally, in England and other commercial countries. Hence we also conclude, that no inconvenience can possibly arise in relation to the obligations of partners in a commercial firm, by deciding the present case in favour of the appellees.

In the case cited from 6 M. n. s. p. 290, it is true that the court, in delivering its opinion, stated it to be of frequent occurrence, that partnerships, by the terms of the contract, last after the death of one of the members, and are continued under the *nom social* for the benefit of his heirs. This may happen when the heirs are of age, and accept the benefit of a stipulation made in their favor, like any other third person, who would, perhaps, be at liberty to claim the benefit of such a stipulation. But we are clearly of opinion that, according to the laws and usages of commerce, as they prevailed in this country at the time of the adoption of the Code of 1808, no stipulation could be made by partners, ab-

*According to the laws and usages of commerce, as they prevailed at the time of the adoption of the Code of 1808, no stipulation could be made by part-*

Eastern District.
*May*, 1830.

LOUISIANA
BANK
*vs.*
KENNER'S SUC-
CESSION.

solutely binding on the heirs of one of them who should die, to continue in the partnership after his death, and be made responsible for contracts made in the partnership name.

It is therefore ordered, adjudged and decreed, that the judgment of the court of probates be affirmed with costs.