EBENEZER BUCKINGHAM *et al.*

*v.*

ALICE B. MORRISON *et al.*

*Filed at Ottawa March 30, 1891.*

| 136 | 437 |
| 62a | 559 |
| 136 | 437 |
| 173 | 235 |
| 136 | 437 |
| 174 | 250 |
| 136 | 437 |
| 209 | [1]354 |
| 209 | [11]399 |
| 111a | 185 |
| 136 | 437 |
| 212 | 355 |

1. WILLS—*bequest for life, with remainder over—relative' rights of life tenant and remainder-man.* In the earlier cases there is a distinction between bequests of specific articles of property and general bequests of all or of the residue of the testator's property, generally. Where the bequest is of specific articles to one for life, with remainder over, the tenant for life is entitled to the possession and use. If the articles are such as perish in the using, the tenant for life has an absolute property, as ordinarily nothing will be left for the remainder-man. If the property does not perish in the using, but is damaged, or becomes depreciated in value, it seems the remainder-man has no remedy, unless, perhaps, the tenant for life may be required to give security when there is danger of wanton waste or fraudulent secretion or removal.

2. SAME—*life tenant and remainder-man—converting into money, and investment.* Where there is a general bequest of a residue for life, with remainder over, of perishable property, the practice is to have the property sold and converted into money by the executor or trustee, and the proceeds safely invested, and the interest or income thereon paid to the life tenant. This is done to preserve equality between the tenant for life and the remainder-man, the latter being as much an object of the testator's bounty as the former, and is entitled to have the *corpus* or principal of the fund devised, preserved until the termination of the life estate.

3. The rule as originally laid down required that "perishable property" should be converted immediately, or as soon as possible, and invested in safe and permanent securities. The meaning of the words "perishable property" has been gradually enlarged, so as to include securities of a wasting nature, or any form of investment of an uncertain kind or attended with risk. The conversion and investment were required whenever the property devised was found to be invested, at the testator's death, in ships, annuities, leaseholds, railway shares, insurance and gas stocks, partnerships, etc.

4. Where there is a residuary bequest of personal estate, to be enjoyed by several persons in succession, a court of equity will not require the conversion into permanent investments of all such parts of the estate as are of a wasting character, if the testator has indicated his intention that the legatee for life shall enjoy the property in the way

in which it stood at the testator's death. Small indications will be allowed to prevent the application of the general rule. The intention of the testator must govern in this respect.

. 5. SAME—*partnership interests—disposition of them on the death of one of the partners—conversion and investment.* There are cases holding that partnership property bequeathed as part of a general residue must be converted and invested, and this in cases where the will has directed that the partnership shall be continued for a certain time after the death of the testator, and even then the profits accruing in the partnership business after the testator's death have been required to be added to the principal, and have been thus treated, not as income belonging to the tenant for life, but as a part of the fund belonging to the remainder-man, and required to be invested in interest bearing securities. But in most of such cases the intention of the testator, by directing the partnership to be continued, has been merely to give the executor or trustees time to wind up the partnership business.

6. If the intention of the testator is to continue the partnership, not merely for the purpose of winding up the business, but as an investment of the property and funds therein embarked, such intention will prevail as against the application of the general rule.          .

7. A member of a partnership, by his will, bequeathed the residue of his estate left after the payment of certain legacies, costs, etc., one-third to his widow and the other two-thirds to be divided between his three sons and two daughters, but directed that the daughters' shares should not absolutely vest in them, but should be retained by two trustees named, consisting of his partner and his nephew, and that only the income on these shares should be paid to them during their natural lives, and that on their death such shares should be paid to their heirs. He also gave his executors discretionary power to continue his business according to the articles of the co-partnership, which provided that the partnership should continue until a lease to the firm should expire or any renewal thereof should expire. His widow and his brother, the latter being his partner, were appointed executors, and after the death of the testator, in 1881, the lease was renewed to the surviving partner, and the business was carried on by the survivor until in 1886: *Held,* that the profits made on the shares of the daughters by their use in the firm since the testator's death belonged to them, and were not to be added to the principal for the benefit of the remainder-men.

8. In such case, although the executors did not continue to carry on the business as such, they still had a discretion, under the will, to say whether or not it should be carried on by the surviving partner; and the fact they were vested with such discretion indicates an intention on the part of the testator to permit the funds invested by him in the partnership to remain so invested, subject only to the judgment of his executors. The fact, also, that the partnership might continue, and

did continue, for over five years after the testator's death, also shows that its continuance was authorized for something more than time to wind up the business. It amounted to a designation by the testator of the firm business, after his death, as a form of investment, and gave the life tenant the right to receive the profits of the investment of her share of the assets.

9. PARTNERSHIP — *contract construed as to continuing partnership after death of one partner.* Articles of co-partnership provided for a continuance of the business thereby created, after the death of either partner, to the expiration of a lease of the premises used in the partnership business; and also provided, that if the lessor should, after the termination of the lease, give to either party, or to the survivor of them, in pursuance of negotiations pending or begun by such co-partners, or either of them, before such survivorship should accrue, any extension of the lease or any new lease, then the partnership should be further extended, etc.: *Held,* that the surviving partner could not, by procuring a new lease after the death of the other, when no such negotiations therefor were had before the death, have the partnership extended beyond the expiration of the prior lease.

10. It is doubted whether partners may, by contract, extend the existence of the partnership for a term of years after the death of one of them, and thus exclude the personal representatives of the deceased member from the management and settlement of the estate, or from calling on the survivor to account.

11. TRUSTEE—*right to compensation for services.* A trustee appointed by a will to hold property in trust for a person for life, and to rent the property and make investments of moneys, and pay the income thereon to the *cestui que trust* during his life, and the remainder to his heirs after his decease, where the will makes no provision to that effect, will not be entitled to charge any compensation for his services.

APPEAL from the Circuit Court of Cook county; the Hon. M. F. TULEY, Judge, presiding.

John Buckingham died testate on August 21, 1881, leaving a widow, Kate M. Buckingham, and three sons, John, Harry and Clifford, and two daughters, Alice B. Morrison, wife of Daniel W. Morrison, and Eva Buckingham. Alice B. Morrison has two infant children, William Morrison and Eva Morrison. This is a bill filed on April 6, 1887, in the Circuit Court of Cook County by the present appellants, Ebenezer Buckingham and Ebenezer B. Convers, as trustees under the

will of John Buckingham, against the widow and children and grandchildren above named, and said Daniel W. Morrison, asking for an account, for the aid of the court in the management and execution of the trust reposed in them by the will, and for a construction of the will as to their duties as trustees thereunder. Default was entered against one of the defendants; answers were filed for the others, and replications were filed to the answers. The cause was heard upon proofs oral and documentary, and a decree has been rendered construing the will. The appellants assign errors and the appellees crosserrors.

The will bears date April 28, 1870, and the codicil to it is dated May 11, 1880; it was admitted to probate in the Probate Court of Cook County on October 3, 1881; the executors named in it are said Ebenezer Buckingham, the brother of the deceased, to whom letters testamentary were issued on October 3, 1881, and his widow, to whom letters were issued on November 14, 1881. By the will, the testator, after bequeathing to his wife certain personalty, "of which I shall be possessed at the time of my death," gives, devises and bequeaths "all the residue and remainder of my estate, both real and personal, one third part thereof to my said wife, and two thirds thereof to be equally divided among my children who shall be living at the time of my death," etc., but directs that "the share of any of my daughters, who shall then be living shall not absolutely vest in any such daughter, but her share shall be retained by my brother, E. Buckingham, and my nephew, E. B. Convers, in trust, who are hereby appointed trustees for such purpose, to lease, mortgage, sell, invest and reinvest the same as to them, my trustees, shall seem best, and only the income thereof paid to my said daughters, or any of them, during their natural lives, and after their decease the whole shares of such daughters, or either of them, to be equally distributed among the heirs of the one so dying," and also thereby expressly directs, "that no part of the share of any of my daughters, or

the income thereof, shall be in any manner subject to the contract of any husband of any of my said daughters, or under the control or liable in any manner for the debts of such husband, but my said trustees shall retain the entire property of the share of any of my said daughters, whether it be real or personal estate, during the life of said daughters, and pay over the income thereof as any of them shall request, but only upon their sole receipt therefor;" the will confers upon the executors "power to sell, convey and dispose of any of my estate, real or personal, at public or private sale, at such times, upon such terms, and in such manner as to them shall seem best," and closes with the following provision: "And in respect to any share and interest in any business in which I may be engaged or interested at my decease, I empower my executors to adjust and settle all accounts and transactions relating to said partnership business, to refer to arbitration, or otherwise to compromise and settle any question that may arise in reference to the same, and in their discretion to continue to carry on the said business according to the provisions of the articles of partnership under which the said business shall be carried on at my decease. And I do hereby further authorize my said executors to take such time as to them shall seem best in the settlement of my estate and execution of any of the provisions of this my will."

At the time of the testator's decease, he and his brother were partners under the firm name of "J. & E. Buckingham" in the business of grain elevating, and in the storage and purchase and sale, on commission or otherwise, of all kinds of grain and cereal products. Their main business was conducted in Chicago, where they owned two elevators, situated upon ground leased by them of the Illinois Central Railroad Company, and located near the mouth of the Chicago river and upon the south side of it. They also owned smaller elevators or grain houses, built in most cases on leased ground, at various shipping points in Illinois, where the grain was bought

and shipped, through such grain houses, to the Chicago elevators; they owned a farm of some 2000 acres in Livingston County and land in Indiana, Illinois and Iowa; they owned town lots in Buckingham, a village laid out by them on said railroad; they had stock in the Chicago Steel Works, and various other interests. All the property and interests thus enumerated belonged to the partnership. The first lease from the railroad company began on October 1, 1866, and ended on October 1, 1876; the second ran from the latter date to October 1, 1881, and the third, made by Ebenezer Buckingham, as surviving partner, after the testator's death, was for the term from October 1, 1881, to December 1, 1886. The leases contained provisions for the purchase of the warehouses by the railroad company at appraised values at the end of the term. The leases also contained unusual contract provisions with the Illinois Central Railroad Company in regard to the mode of conducting the storage business of the firm and handling the grain freights of the Company. The relations of the firm with the company were very intimate, and the business facilities growing out of such relations were peculiar and unusual. The articles of partnership bear date February 11, 1868, but recite that the firm was formed on October 1, 1866.

The surviving partner paid over to the testator's estate between the latter's death and December 1, 1886, for the support of his family and the payment of debts or costs of administration, about $67,000.00, and has paid over to said estate, on account of its interest in the firm, between December 1, 1886, and April 13, 1889, about $450,000.00. Between the two latter dates, the trustees above named have received about $58,500.00 as the share of Alice B. Morrison in said business, and about $58,500.00 as the share of Eva Buckingham therein. Between the date of the testator's death and December 1, 1886, the trustees received the sum of about $6700.00 for each of said daughters, and paid the same to them in monthly sums of $100.00 to each. The partnership

affairs are not yet settled. The individual estate of the testator proved insufficient for the payment of all the debts, costs and expenses of administration.

The share of the daughter Alice B. Morrison is two-fifteenths of the general residue and remainder of the testator's estate after paying debts, funeral expenses, costs of administration and satisfying the specific legacy to the widow, but subject to the adjustment required by the codicil of an advancement of $6000.00 made to said Alice. The share of the daughter, Eva Buckingham, is also two-fifteenths of said residue and remainder after paying debts, etc., and satisfying said legacy.

Messrs. CHARLES M. STURGES, for the appellants:

Where there is a general bequest of a residue, or share of a residue, in an estate to one for life, with a remainder over, it is the rule, in equity, that the property embraced in such residue or share must be converted into money, and the proceeds invested as a permanent fund, in safe securities, so that the life tenant may have the income for life, and the remainderman may be assured of the principal, unimpaired, upon the expiration of the life estate. *Burnett* v. *Lester,* 53 Ill. 325; *Welsch* v. *Savings Bank,* 94 id. 191; *Kinmouth* v. *Brigham,* 5 Allen, 270; *Healy* v. *Toppan,* 45 N. H. 243; *Trust Co.* v. *Eaton,* 140 Mass. 539; *Spear* v. *Tinkham,* 2 Barb. Ch. 211; *Cairns* v. *Chaubert,* 9 Paige, 160; *Mudge* v. *Parker,* 139 Mass. 153; *Westcott* v. *Nickerson,* 120 id. 410; *Covenhoven* v. *Shuler,* 2 Paige Ch. 122; *Emmons* v. *Cairns,* 2 Sandf. Ch. 369; *Smith* v. *Barham,* 2 Dev. Eq. 420; *Howe* v. *Earl of Dartmouth,* 7 Ves. 137; *Fearns* v. *Young,* 9 id. 549; *Dimes* v. *Scott,* 4 Russ. 195; *Brown* v. *Gellatly,* L. R. 2 Ch. App. 751; *Sutherland* v. *Cook,* 1 Colly. Ch. 498; *Meyer* v. *Simonsen,* 5 DeG. & S. 723; *Morgan* v. *Morgan,* 14 Beav. 72; *Tickner* v. *Old,* L. R. 18 Eq. Cas. 422; *Taylor* v. *Clark,* 1 Hare, 161; *Caldecott* v. *Caldecott,* 1 Y. & C. Ch. 312; *McDonald* v. *Irvine,* L. R. Ch. Div. 101; *Llewellyn's Trust,* 29 Beav. 171; *Porter* v. *Baddely,* L. R. 5 Ch.

Div. 542; *Johnson* v. *Johnson,* 2 Colly. Ch. 441; *Mills* v. *Mills,* 7 Sim. 500; *Benn* v. *Dixon,* 10 id. 636; *Jebb* v. *Tugwell,* 20 Beav. 84; *Hood* v. *Clapham,* 19 id. 90; *Pickup* v. *Atkinson,* 4 Hare, 624; *Chambers* v. *Chambers,* 15 Sim. 183; *Litchfield* v. *Baker,* 2 Beav. 481; 13 id. 447.

Even where the trustee has a power to invest at discretion, equity will, it seems, in its solicitude for the safety of the trust fund, construe this to be, not a discretion to be exercised at mere pleasure, but to be only a sound legal discretion, to be exercised consistently with prudence and the safety of the fund. *In re Whitely,* L. R. 33 Ch. Div. 347; *Brown* v. *Brown,* L. R. 29 Ch. Div. 889; *Kimball* v. *Redding,* 31 N. H. 352; *Webb* v. *Earl of Shaftsbury,* 7 Ves. 487; 1 Perry on Trusts, sec. 453.

The trustee was properly allowed compensation. *Burney* v. *Saunders,* 16 How. 535; *Phillips* v. *Bustard,* 1 B. Mon. 350; *Burrell* v. *Joy,* 16 Miss. 221; *Miller* v. *Beverleys,* 4 H. & M. 415; 2 Story's Eq. Jur. sec. 1268, note 5.

The policy of Illinois is not in accord with the English rule. Here, executors and administrators, (Rev. Stat. 1874, chap. 3, sec. 133,) guardians (chap. 64, sec. 42,) and conservators, (chap. 86, sec. 36,) are all awarded compensation. There seems never to have been a time in Illinois when this policy did not exist.

Messrs. STILES & LEWIS, for the appellees:

The decree is not erroneous in giving to the life tenants the profits of the partnership business as income, under the will. *Highbee* v. *Littig,* 63 Md. 301; *Skirving* v. *Williams,* 24 Beav. 275; *Green* v. *Britten,* 1 DeG., J. & S. 649; *Murtz's Appeal,* 106 Pa. St. 301; *McClintock* v. *Dana,* 106 id. 386; *Morgan* v. *Morgan,* 14 Beav. 72; *Shoemaker's Appeal,* 106 Pa. St. 392; *Ware* v. *McCandlish,* 11 Leigh, 595; *McDonald* v. *Irwin,* L. R. 8 Ch. Div. 102.

The following are cases which illustrate the position that "slight indications" of intention will be sufficient to displace

the general rule: *Alcock* v. *Sloper*, 2 M. & K. 114; *Pickering* v. *Pickering*, 2 Beav. 31; 4 M. & C. 289; *Bethune* v. *Kennedy*, 1 id. 114; *Goodenough* v. *Tremanendo*, 2 Beav. 512; *Daniel* v. *Warren*, 2 T. & P. Ch. 290; *Hinves* v. *Hinves*, 3 Hare Ch. 609.

On bequest of the residue of the testator's estate, or of some aliquot part or portion thereof, in trust, to pay the interest or income to a legatee for life, with the gift of the principal over at his death, the interest or income payable to the tenant for life will be computed from the testator's death. *Marsh* v. *Taylor*, 43 N. J. Eq. 1; *Welsh* v. *Brown*, 43 N. J. L. 37; *Bartlett* v. *Slater*, 53 Conn. 106; *Green* v. *Green*, 30 N. J. Eq. 451; *Green* v. *Blackwell*, 32 id. 768; *Van Blarcom* v. *Dayer*, 31 id. 783; *Levering* v. *Minot*, 9 Cush. 151; *Minot* v. *Amory*, 2 id. 377; *Lamb* v. *Lamb*, 11 Pick. 371; *Kinmouth* v. *Brigham*, 5 Allen, 270; *Meadwell* v. *Cordis*, 5 Gray, 341; *Pollock* v. *Leonard*, 102 Mass. 49; *Sargent* v. *Sargent*, 103 id. 297; *Healy* v. *Toppan*, 45 N. H. 243; *Williamson* v. *Williamson*, 6 Paige, 298; *Cairns* v. *Chaubert*, 9 id. 160; *Cooke* v. *Meeker*, 36 N. Y. 15; 42 Barb. 533; *Brown* v. *Knapp*, 79 N. Y. 136; *Lawrence* v. *Embree*, 3 Bradf. 364; *Fish's Estate*, 19 Abb. Pr. 209; *Harrison* v. *Henderson*, 7 Heisk. 315; *Evans* v. *Iglehart*, 6 G. & J. 171; *Hillyard's Estate*, 5 W. & S. 30; *Spangler's Estate*, 9 id. 130; *Eyre* v. *Golding*, 5 Binn. 472; *Brown* v. *Gellatly*, L. R. 1 Ch. App. 751; *Augerstein* v. *Martin*, Turn. & R. 232; *Hewitt* v. *Morris*, id. 241; *Hearnes* v. *Young*, 9 Ves. 553; *Dimes* v. *Scott*, 4 Russ. 195; *Morgan* v. *Morgan*, 14 Beav. 72; *Taylor* v. *Clarke*, 1 Hare Ch. 161; *La Ferrieri* v. *Bulmer*, 2 Sim. 18; *Douglas* v. *Congreve*, 1 Keen, 410.

The trustees were not entitled to compensation. *Constant* v. *Matteson*, 22 Ill. 546; *Hough* v. *Harvey*, 71 id. 72; *Huggins* v. *Rider*, 77 id. 360.

Mr. JUSTICE MAGRUDER delivered the opinion of the Court:

No question arises as to the validity or invalidity of any of the provisions in the lease executed by the railroad company

to the firm of J. & E. Buckingham, nor is there any controversy as to the interests of the widow and the three sons in the estate of the testator. The only matter in dispute relates to the interests of the testator's two daughters, Alice B. Morrison and Eva Buckingham. By the will, there is a general bequest of a share in the residue of the estate to trustees for the benefit of each of said daughters for life with remainder over. Each is to have only the "income" of her share during her natural life. The main question presented for our consideration is, whether the profits upon the trust shares, which have accrued in the partnership business since the death of the testator, shall be paid to the tenants for life as a part of their "income," or whether such "income" is merely the interest to be derived from a secure investment of such profits when added to the trust share of the principal embarked in the business. In other words, must the profits so accruing be added to the principal, so as to constitute the fund belonging to the remainder-men, and is the interest on such fund, when invested, the only "income," to which the tenants for life are entitled?

In the earlier cases, there is a distinction between bequests of specific articles of property, and general bequests of all, or of the residue of all, the testator's property generally. Where the bequest is of specific articles to one for life with remainder over, the tenant for life is entitled to the possession and use. If the articles are such as perish in the using, the tenant for life has an absolute property, as ordinarily nothing will be left for the person in remainder. If the property does not perish in the using, but is damaged or becomes depreciated in value, it would seem that the remainder-man has no remedy, unless, perhaps, the tenant for life may be required to give security, where there is danger of wanton waste, or fraudulent secretion, or removal.

But in *Howe* v. *Earl of Dartmouth*, 7 Ves. 137, it was held that, where a bequest of personal property is not specific, but is a general gift of all such property, or of the residue of such

property generally, to a person for life with remainder over, and where such general bequest includes perishable property, the object of the testator can only be effected by converting such property, and investing the proceeds of the conversion in permanent securities for the benefit of the remainder-man, and giving the tenant for life only the income arising there-from.

This doctrine is recognized in the United States. Chancellor Kent thus expresses it: "Where there is a general bequest of a residue for life, with remainder over, the practice now is to have the property sold and converted into money by the executor, and the proceeds safely invested, and the interest thereof paid to the legatee for life." (2 Kent's Com. 354). The rule, as thus stated in Kent, was approved by this Court in *Burnett et al.* v. *Lester et al.* 53 Ill. 325.

The reason of the rule is founded upon the intention of the testator that perishable property shall be enjoyed by different persons in succession, and upon the impossibility of accomplishing such object without a sale and conversion. The application of the rule tends to secure equality of enjoyment as between the tenant for life and the remainder-man. The latter is presumed to be as much the object of the testator's bounty as the former, and is entitled to have the *corpus,* or principal of the fund devised, so preserved as to come into his possession at the termination of the life estate.

In the application of the rule many questions have arisen of a perplexing character, in reference to which there is much diversity of opinion in the authorities. One of these relates to the *date* from which the income of the tenant for life begins to accrue. In some cases, it is held that such income must be computed from the death of the testator, in others from the expiration of the first year after his death, the latter being regarded as a reasonable time, within which the executor might make the conversion. What rate per cent shall be adopted as the standard for computing the income and determining its

amount? In England the standard has been fixed at three and four per cent, in New York at five per cent, in New Hampshire at five per cent, in Massachusetts at six per cent. How shall the principal of the trust fund, upon which the rate is to be computed, be determined? In the English cases, the conversion is "feigned" to have occurred at a given period, that is to say, a value is placed upon the estate at the date of the testator's death, or one year thereafter; the estate is considered as converted into money at such date; this value is made a principal, upon which the standard rate is computed to determine the income to be paid to the tenant for life until the trust estate is actually converted and invested. In some of the American cases, each amount received from the conversions of the estate is distributed between the tenant for life and the remainder-man, by computing what sum with interest at the standard rate from the date fixed for the beginning of the income will produce the amount so received at the time when it is received, and by investing the original sum so computed as principal, and distributing the remainder as income. Whether the income is to be computed at simple interest, or with rests, in favor of the life-tenant has also been a matter of much discussion.

The rule as originally laid down required, that "perishable" property should be converted immediately, or as soon as possible, and invested in safe and permanent securities. Gradually the meaning of "perishable" property has been enlarged, so as to include securities of a wasting nature, or any form of investment of an uncertain kind, or attended with risk. The conversion and investment here spoken of were thus required, whenever the property so devised by the testator was found at his death to be invested in ships, annuities, leaseholds, railway shares, insurance, canal and gas stocks, partnerships, etc.

There are cases in the books, which hold that partnership property of the testator, bequeathed as part of a general resi-

due, as above stated, must be converted and invested in accordance with the principles already referred to. In some of the cases, the will has directed that the partnership should continue for a certain time after the death of the testator; and even there the profits accruing in the partnership business after the testator's death have been required to be added to the principal, and have thus been treated, not as income belonging to the tenant for life, but as a part of the fund belonging to the remainder-man and required to be invested in interest-bearing securities. But in most, if not in all of such cases, the intention of the testator in directing the partnership to be continued has been merely to give the executors or trustees time to wind up the partnership business. In the construction of all wills, effect must be given to the intention of the testator. Even the rule, which we have been discussing, must yield to such intention when it is apparent upon the face of the will.

Where there is a residuary bequest of a personal estate to be enjoyed by several persons in succession, a court of equity will not require the conversion into permanent investments of all such parts of the estate as are of a wasting character, if the testator has indicated his intention that the legatee for life shall enjoy the property in the way, in which it stood, at the testator's death. "The effect of the later cases has been to allow small indications of intention to prevent the application of the general rule." (*Morgan* v. *Morgan*, 14 Beav. 72). "In modern cases, circumstances apparently trifling have been held sufficient to entitle a tenant for life to the enjoyment, in specie, of the residue for his life." (*Mackie* v. *Mackie*, 5 Hare, 70; *Macdonald* v. *Irvin*, Law Rep. 8 Ch. Div. 101; *Litchfield* v. *Baker*, 2 Beav. 481 and 13 Beav. 447). This court recognized the doctrine, that the "general rule" is only applicable where there is nothing to indicate an intention to the contrary, in *Welsch* v. *Belleville Savings Bank*, 94 Ill. 191. The following are some of the authorities upon this subject: *Westcott*

v. *Nickerson*, 120 Mass. 410; *Mudge* v. *Parker*, 139 id. 153; *Kinmouth* v. *Brigham*, 5 Allen, 270; *Healy* v. *Toppan*, 45 N. H. 243; *Heighe* v. *Sittig*, 63 Md. 301; *Brown* v. *Gellatly*, Law Rep. 2 Ch. Ap. 751; *New England Trust Co.* v. *Eaton*, 140 Mass. 539; *Williamson* v. *Williamson*, 6 Paige, 298; 1 Perry on Trusts, 3d ed. secs. 449, 450, 451 and 454; Hill on Trustees, 386 and 390; 2 White & Tudor's Lead. Cases in Equity, 345 and 347.

If the intention of the testator, as disclosed by his will, is to continue the partnership, not merely for the purpose of winding up the business, but as an investment of the property and funds therein embarked, such intention will prevail as against the application of the "general rule." In determining, therefore, whether those portions of the principal, owned by the testator at the time of his death and invested at that time in the firm of "J. & E. Buckingham," which are devised in trust to appellants, shall be increased by the addition thereto of all the profits thereon made by said firm in its partnership business since his death, and shall be invested as of a certain date at a certain rate of interest under the principles already announced, or whether such profits so accruing since his death shall be paid over to his daughters as "income," it becomes necessary to examine the will, for the purpose of learning the intention of the testator as to the continuance of the investments existing at his death in the partnership business.

The seventh clause of the will contains the words: "And in respect to any share and interest in any business in which I may be engaged or interested at my decease, I empower my said executors * * * in their discretion to continue to carry on the said business *according to the provisions of the articles of partnership* under which the said business shall be carried on at my decease." In order to ascertain how the executors were to continue to carry on the business, reference must be made to the articles of the partnership agreement. These articles, executed on February 11, 1868, were in force on April

28, 1870, when the will was made, and on May 11, 1880, when the codicil was executed, and were still in force at the time of the testator's death.

These articles of co-partnership provide, that the partnership shall continue until the lease of ground theretofore made to the firm by the Illinois Central Railroad Company, and upon which ground the elevators of the firm had been built and then stood, should expire, that is to say, until October 1, 1876. They further provide that, if the railroad company shall at the end of said lease execute to the firm a new lease of the ground for another term, the partnership shall continue to the end of such new term. On October 1, 1876, the company did give to the firm a lease for five years running until October 1, 1881. This lease expired a little more than a month after the death of the testator, which occurred on August 21, 1881.

But the articles also provide, that, in case of death, the partnership shall not cease or be dissolved, but that the surviving partner shall continue to carry it on until the end of the full term or terms, provided in the articles for the duration of the partnership. It is then further therein provided, that, if the railroad company after the expiration of the term ending on October 1, 1876, shall give to either partner, or *the survivor of them,* in pursuance of negotiations pending or begun by such copartners, or either of them, before the occurrence of such survivorship, any extensions of the lease, or any new leases, or terms for years, then and in that case, and so often as the same shall occur, the term of the existence of said partnership shall further extend to and until the expiration of each and every such extension or new term for years, and for such reasonable time after the expiration thereof as shall be necessary for the proper winding up of the affairs of the copartnership.

The articles still further provide, that the surviving partner shall carry on the business until the end of such term or terms

without any interference, participation or control from or by
the heirs, legatees or representatives of the deceased partner,
and shall not be liable to account to them for any assets,
monies or profits, belonging or accruing to them by virtue of
their share in the firm, until the end of such term or terms,
but shall retain the same in his own hands until the end there-
of, and until the winding up of the partnership affairs, and
shall be vested with a sole discretion in the management of
the business, funds and assets, etc.; and that the separate
estate of the deceased partner shall not be liable for the losses
or debts of the firm incurred by the survivor, but the surviving
partner, with the creditors, shall have recourse only to the
partnership assets, or to the capital, funds or estate of the
deceased partner invested at the time of his death in such firm
business, taken in connection with his share of the subsequent
profits accruing thereon.

After the death of the testator the railroad company exe-
cuted a new lease, dated September 15, 1881, leasing the
ground in question to Ebenezer Buckingham as surviving part-
ner, for a period extending from October 1, 1881, to December
1, 1886. The execution of this lease has been treated by all
the parties as an extension of the partnership business and
a continuation thereof for more than five years after the tes-
tator's death. It will be noted, that the surviving partner is
also one of the executors, and that he obtained the new lease
before letters testamentary were issued to himself and the
widow, as executors of the estate. He carried on the business,
as such survivor, until December 1, 1886, and thereafter, with-
out any interference or attempted control on the part of the
widow or children of his deceased brother. Although not
bound to do so by the terms of the articles, he paid over to
the executors such sums as were necessary for the support of
the testator's family.

It is claimed, that the executors did not and could not exer-
cise any such discretion as the will attempted to confer upon

them, but that the partnership was carried on after the testator's death by the surviving partner under the articles, independently of any discretion vested in the executors. We think, however, that, although the executors themselves as such did not continue to carry on the business, yet they had a discretion, under the will, to say whether or not it should be carried on by the surviving partner. The fact, that they were vested with such discretion, shows that it was the intention of the testator to permit the funds invested by him in the partnership to remain so invested, subject only to the judgment of his executors. It was possible, under the articles referred to in his will, for the business to be carried on after his death for a long term of years. Its continuance in this manner could not be for the mere purpose of winding up the partnership affairs, because the agreement provides for an extension of time beyond the expiration of the term for such purpose. The partnership was continued as a business, as a form of investment, until December 1, 1886. It was after the latter date, that the continuance for winding up the affairs of the firm was allowed. When the terms of the will and the terms of the articles of partnership are construed together, it is manifest that it was the intention of the testator to authorize his executors to consent to the acceptance of a new lease for another term of years by his surviving partner after his own death, and to carry on the partnership, during the duration of such term, as a business, and, after the end of the term, to carry it on still longer for the purpose of winding it up. It seems to us that this was an actual designation by the testator himself of the partnership business as the particular form of investment, which might be adopted as to the partnership assets and funds. This being so, the tenants for life are entitled to receive the profits on the trust shares of the assets so invested, which have accrued since the testator's death.

The claim, that the language of the will could not apply to the continuance of the business by the surviving partner, pro-

ceeds upon the idea that the articles of copartnership made the surviving partner independent of the executors. But such independence did not exist as matter of fact. It will be noticed, that the lease to be given after the decease of one partner was to be executed to the survivor in pursuance of negotiations by the partners, or either of them, begun or pending before the occurrence of the survivorship. We find no evidence in the record, that any negotiations with the railroad company for a new lease had been begun, or were pending, before, or at the time of the testator's death. If there were no such negotiations, the executors had the power to stop the continuance of the partnership as not being authorized by the terms of the articles. They, however, permitted it to continue, and their conduct in this regard must be presumed to have been the result of the exercise of the discretion conferred by the will.

But, even if the continuance of the partnership was in pursuance of negotiations begun before the testator's death, as counsel for appellees seem to assume, it is doubtful whether the executors could be excluded from the management of the estate by the terms of the articles of partnership. Under sections 89 and 90 of the Act in regard to the Administration of Estates, (1 Starr & C. Ann. Stat. pages 228 and 229), the surviving partner is required to proceed with the settlement of the business without delay, and may be called to account by the county court upon application of the executor or administrator. In *Louisiana Bank* v. *Kenner's Succession*, 1 La. 384, it was held, after an exhaustive review of the authorities, to be an unsettled question whether stipulations in the articles of partnership, providing for its continuance after the death of a partner for the benefit of the heirs, are binding upon them. According to Chancellor Kent, "the better opinion is that they are not anywhere absolutely binding. It is at the option of the representatives, and if they do not consent, the death of the party puts an end to the partnership." (3 Kent's Com.

57 n ; 1 Parsons on Cont.—6th ed.—200, note d). Hence, in the present case, the will merely allowed the executors a discretion which the law would permit them to exercise, even as against the power conferred by the partnership agreement upon the surviving partner.

These articles provide that the surviving partner is to continue the business "for the equal *benefit* of him, such survivor, and of the share * * * of such deceased co-partner." The profits to accrue upon such share of the deceased partner are spoken of in the articles as being something distinct and separate from the share itself, and are to be accounted for by the survivor at the end of the term distinctly and separately from the share. They are not treated as a part of the share, but as the income from it. If the continuance of the partnership was to be for the "benefit" of the share, the investment of his funds therein could not have been regarded by the testator as being unsafe, or hazardous, or requiring an immediate conversion to prevent loss.

Alice B. Morrison and Eva Buckingham set up in their answer, as an estoppel and bar, a judgment obtained by them in New York against the present appellants as trustees, and claim that the same question, here involved, as to their right as tenants for life to the profits accruing after the death of their father, was also involved in the New York suit, and that the appellants are estopped by said judgment from re-litigating the matter in this proceeding. Inasmuch as, under the views already expressed, the same conclusion is here reached as though such judgment was held to have the effect claimed for it, it is unnecessary to decide whether the trustees are estopped or barred by it, or not.

The appellees assign, as cross error, that the decree of the court below allowed the appellants compensation as trustees for their services in the execution of the trust. The decree is erroneous in this respect under the recent decision of this Court in the case of *Cook* v. *Gilmore et al.* 133 Ill. 139.

The decree of the Circuit Court is affirmed in so far as it gives to the daughters of the testator, Alice B. Morrison and Eva Buckingham, appellees herein, the profits accruing since the testator's death upon the portions of the share of the testator in said partnership business, which are held in trust by the appellants for said daughters as tenants for life with remainder over as provided for in the will, but the decree is reversed in so far as it allows compensation to appellants as trustees.

The decree of the Circuit Court is reversed in the respect thus indicated, and the cause is remanded to that Court with directions to change its decree in accordance with the views here expressed. The costs will be paid by the appellants out of the trust funds.

*Decree reversed in part and in part affirmed.*