## JONES *v.* WALKER.

1. The last will and testament of A. directs that his interest in a firm, whereof he was a member at the time of his death, "be continued therein, and be. chargeable for its debts and liabilities," but that his "other property shall not be so chargeable." *Held,* that the general assets of his estate are not bound for the debts of the firm which were contracted subsequently to his death.

2. The profits arising from that interest were, pursuant to the will, paid from time to time, the firm being then free from debt, and its capital undiminished. It afterwards became bankrupt. *Held,* that the legatees receiving them were not liable to the assignee in bankruptcy therefor.

APPEAL from the Circuit Court of the United States for the District of Kentucky.

The facts are stated in the opinion of the court.

*Mr. Martin Bijur* and *Mr. W. O. Dodd* for the appellant.
*Mr. John Mason Brown,* contra.

MR. JUSTICE MILLER delivered the opinion of the court.

W. H. Walker, who was a large dealer in liquors in partnership with his son Frederick, made his will in July, 1870. One of the clauses of the will provided for the continuance of the partnership and the conduct of this business after his death.

It is in this language : —

"It is my wish that my son Frederick carry on the business of W. H. Walker & Co. in that name and style, and in my storehouse where it is now carried on, giving him power to change the place until my youngest child living to be twenty-one years of age arrives at that age, or for a shorter time, if he does not find it profitable. To that end all my capital and interest in said concern shall be continued therein, and shall be chargeable for its debts and liabilities; but my other property shall not be so chargeable while Frederick carries on said business; my share shall pay the salary of an efficient man to aid him therein, or he shall have compensation for his services as to and from my share. Agents and employés of the concern are to be paid by it. Frederick is not to be charged with five thousand dollars advanced by me to him on his coming of age,

and he is to have the privilege to purchase, at a fair valuation and upon reasonable time, such portion of my share in said concern and its good-will as will make his share equal to one-half. What he may so pay is to be divided as profits of the concern. While my storehouse is occupied by the concern it shall pay rent therefor. The profits of said concern, which shall be ascertained and declared in the first of January after my death, and annually thereafter, shall be divided between my wife and children, or their descendants, and others. As my personalty is to be divided among them when my youngest child living to be twenty-one years of age arrives at that age, or at the death of my son Frederick before that time, or when he discontinues the business, my interest in the concern and its good-will shall be sold as my executors may direct, and the proceeds divided, as the profits thereof are to be divided, with an obligation, if possible, that the business may be carried on under the old name and style."

The testator died in 1872, and the business was conducted as directed in the will until Feb. 27, 1877, when the firm, on the petition of its members, was declared bankrupt by the proper court.

The appellant Jones was made assignee, and very shortly afterwards filed the bill in the present case against the devisees of W. H. Walker's will.

The object of the bill is twofold, namely, to subject the property of the deceased, which had not been embarked in the partnership enterprise, in the hands of the devisees, to the payment of the partnership debts, and to recover from the defendants money which they had received as dividends out of the profits of the business after the death of the testator.

In the recent case of *Smith* v. *Ayres* (101 U. S. 320), the legal principle lying at the foundation of the first of these grounds of relief was fully discussed and determined. It was there held that a testator might authorize the continuance of a partnership, in which he was engaged at the time of his death, without subjecting any more of his property to the vicissitudes of the business than what was then embarked in it, and that, unless he had expressly placed the whole, or some other part of his estate, under the operation of the partnership, it would not

be presumed that he had so intended. See also *Burwell* v. *Mandeville's Executor*, 2 How. 560; *Ex parte Garland*, 10 Ves. Jr. 109. In the case before us the testator declares, in express terms, that his capital and interest in said concern shall be continued therein, and shall be chargeable for its debts and liabilities; but his other property shall not be so chargeable.

We see no reason in the present case for departing from the principle adopted in *Smith* v. *Ayres* after much consideration.

If dividends of profits out of the partnership business were honestly and fairly made, and when paid did not diminish the capital, nor withdraw what was necessary to pay the indebtedness of the concern, we see no reason why the persons receiving them should now be called on to refund them.

The will of the testator has a clause authorizing these dividends. The partnership had a long time to run and a large part of his capital was engaged in the business. There were children to be reared and educated, and it would have been very unreasonable that all the profits should be continually converted into capital, and that neither these children, nor Frederick, the other partner, should be permitted to receive dividends of profits, except on the condition of a liability to that extent for any future transactions of the partnership through a period of fifteen or twenty years.

If these dividends had not been declared in good faith, nor really earned, if they had diminished the capital, or if, when they were made, debts existed which would have been left without means of payment, the persons sharing in the dividends would probably have been liable to these creditors to the extent of the money so received.

But we are satisfied that none of these conditions existed.

The case is mainly one of fact, and the testimony is very full. We do not think its discussion here profitable or useful. We are satisfied that at the time the last dividend was made the capital of the company was undiminished, and the firm amply able to pay its debts. Its misfortunes followed after this.

It very fully appears that the insolvency was brought about

by accommodation indorsements for others, made after the last dividend was paid; that the firm, but for this, would have remained solvent, and that, in regard to this, none of the de fendants were to blame except Frederick, who, being a full partner, is liable personally for all the debts of the firm.

An important matter in the case is a stipulation of the parties to the suit that all the debts owing by the firm were contracted subsequently to the declaration and payment of all the dividends, and none of the debts of the firm were in existence at the time these profits were declared and paid.

No creditor whose debt was in existence when these dividends were made was injured. All the debts then existing have been paid. What right had subsequent creditors to reclaim these dividends, who had no interest in the matter when they were paid? These defendants, except Frederick, were not partners. Their money was in the concern, and they received dividends instead of interest.

We repeat that there is no evidence of fraud or intentional wrong.

*Decree affirmed.*