(No. 14109.—Judgment affirmed.)
THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ANGELO ZANGAIN, Plaintiff in Error.

*Opinion filed December 22, 1921—Rehearing denied Feb. 9, 1922.*

1. CRIMINAL LAW—*when indictment for burglary sufficiently alleges ownership of building.* Ownership of a burglarized store is sufficiently alleged where the indictment states such ownership to be in James A. Hendricks and the estate of H. H. Morgan, deceased, operating under the firm name of Morgan & Hendricks; and it is not necessary to give the names of heirs and devisees in addition to naming the estate as a partner, as the substantial test is whether ownership is so alleged that an acquittal or conviction under the indictment may be pleaded in bar of a subsequent prosecution for the same offense.

2. SAME—*when instruction is not erroneous in assuming facts.* An instruction given for the People in a burglary case, to the effect that the defendant's claim that he was forced to act by his companions should receive careful consideration, but that the jury should find him guilty if they believe from all the evidence, beyond a reasonable doubt, that he did not act through fear but with the intent and purpose of committing a burglary, is not erroneous, where the defendant himself has admitted and testified to the burglary and his participation therein.

THOMPSON, DUNN and DUNCAN, JJ., dissenting.

WRIT OF ERROR to the Circuit Court of Shelby county; the Hon. THOMAS M. JETT, Judge, presiding.

CHARLES A. KARCH, for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, R. I. PUGH, State's Attorney, and EDWARD C. FITCH, for the People.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

On August 11, 1920, about 11:30 at night, the plaintiff in error, Angelo Zangain, and two other men, came from the west into Oconee, a village of 200 or 300 inhabitants in Shelby county, in an automobile driven by the plaintiff in error. The car was turned around, facing west, and the

lights were extinguished and it was left by the roadside at
the edge of the village. The men got out of the car and
walked to the store of Morgan & Hendricks, the other men
in front and the plaintiff in error following them. The
night watchman saw them and hid himself behind a tree,
and after the men had passed he followed them to the store
building. They went to the side of the building, where one
of them held a flashlight up and down along the seam of
the door, and the watchman seeing that a burglary was
about to be committed went for help. He got two men,
who returned with him to a point where they could see into
the building. One of the men was patrolling in front of
the building and the plaintiff in error and the other man
were inside of the store. The plaintiff in error was on
one side of the store taking shoes and the other man was
standing at the shelving using his flashlight in taking down
bolts of goods and laying them on the counter. The watch-
man and the men with him thought it advisable to get more
help, and so the watchman went after Hendricks, owner
of the store. While the watchman was getting Hendricks,
the men whom he had first called went to the car and one
of them disconnected the wires from the spark plugs and
took a part of the distributor from the car so that it could
not be run. The watchman, with his three men, returned
to the store, and finding that the burglars had left, started
back to the car. When they were near the car the three
men passed them loaded with merchandise, which they put
in the car and tried to start it, but it would not start. After
several efforts to start the car the lights were turned on,
and one of the men with the watchman ordered the burg-
lars to step out and throw up their hands and said that
they were surrounded. There was a scrambling around the
car and the watchman and his companions fired a fusillade
at the car, and there was testimony that one shot was fired
from the car, which received a good many bullets. The
headlights were shot out, the radiator was shot and leaking,

there was a bullet hole in the running-board and forty-seven shot-holes were in the top. The men in the car appeared to have been merely trying to get away, and they succeeded, but the plaintiff in error, who was behind the others, received a lot of shot in his back from a shotgun. The plaintiff in error did not return, and at the November term, 1920, of the circuit court of Shelby county he was indicted for the burglary with John Doe and Richard Roe, known by no other names to the grand jurors. The other men were never identified or apprehended and the plaintiff in error was tried at the April term, 1921, when the facts above stated were proved and admitted to be true. The plaintiff in error testified and gave an account of the burglary, and his defense was that he was compelled at the point of a revolver to participate in the commission of the crime. He lived at Panama, Illinois, and was a partner in a pool-hall, where soft drinks were retailed at a bar, and he also worked in a mine. He proved that he was hired by the two men, who were strangers, to take them in his car to Pana for $15. In pursuance of that employment he testified that they went to Oconee, and he supposed that it was Pana; that he was compelled to take part in the burglary; that one of the men stayed outside and the other one made him go into the store by threatening him with a revolver which the man had in his hand all the time; that he got the shoes and the men made him carry sacks containing the bundles of stolen goods, and that when the shooting took place he ran away, stayed in the woods all night, and was scared and did not go back afterward to get his car.

The question to be determined by the jury was whether the plaintiff in error was compelled to do what he did in the commission of the crime. There was no evidence that he knew of the intention of the men who hired him until the car was left at the roadside and they all went to the store, but he had fulfilled his agreement as he understood it. There appears no reason why he should have followed the

men to the store. It was proved, and not disputed, that he followed them, and that the man who was in the store with him was not near him and was standing up, with his back toward him, using a flashlight to take down bolts of goods. After he knew the burglary had been committed and the three were called upon to come out of the car and throw up their hands and were told that they were surrounded he ran away with the others. He was in no danger from his companions and was the last one to get away, so that, being behind the others, he received a lot of shot. He did not come back, and it was a fair question for the jury whether he voluntarily participated in the burglary. The jury naturally concluded that he did, and we agree with the conclusion.

There was a motion to quash the indictment and also a motion in arrest of judgment, both of which were denied. The conviction was for burglary, and the motion in arrest questioned the sufficiency of the indictment to sustain the verdict. The rulings on both motions are questioned in the brief in the following language: "It is manifest that ownership of the property burglarized is not alleged. The ownership not being alleged, the indictment is fatally defective." There is no argument in support of the brief, but we infer that counsel means that while ownership is alleged, as it clearly was in fact, the alleged owners, or some of them, were incapable of owning property. It was alleged that the store building was owned by James A. Hendricks and the estate of H. H. Morgan, deceased, a partnership operating under the firm name of Morgan & Hendricks. In a crime relating to property the ownership is essential, and at one time the rule as to the description of the owner was exceedingly strict. In *Willis* v. *People,* 1 Scam. 399, the court decided that an indictment for larceny of property of a partnership which did not give the Christian names of the partners in full but only the initials was insufficient. Evidently that decision would not be adhered

to now, in view of the decision in *Little* v. *People,* 157 Ill. 153, that there was no variance between an indictment charging ownership in John F. Hinckley and proof of the same in J. F. Hinckley, which could only be so if J. F. Hinckley was regarded as a person and capable of owning property. The owner must be named and the ownership proved, and the substantial test is whether it is so alleged that an acquittal or conviction under the indictment can be pleaded in bar of a subsequent prosecution for the same offense. The indictment in this case fulfills that condition. Where the title to partnership property goes upon dissolution by the death of a partner if there is no provision for a continuance of the partnership is beside the question. If that had been the case and the title to the partnership property passed to James A. Hendricks as surviving partner the indictment would be good, and the addition of the estate of H. H. Morgan, deceased, which would have an interest in the residue after the settlement of the partnership, would not vitiate it. That, however, has no application here, because the averment is that the store building was the property of James A. Hendricks and the estate of H. H. Morgan, deceased, a partnership operating under the firm name of Morgan & Hendricks, and if the estate of a deceased partner may be a member of a partnership and carry on the business after his death, the averment of the indictment was sufficient.

It is settled by all authority that the business of a partnership may be continued after the death of a partner, either by the original articles of co-partnership, or by parol agreement between the partners, or by the will of a partner with the assent of the other partners, or even by agreement of the surviving partners and the representatives of the estate of the deceased partner. (20 R. C. L. 990; Rowley's Modern Law of Partnership, sec. 638; *Jones* v. *Walker,* 103 U. S. 444; *Murphy* v. *Murphy,* 217 Mass. 233; *Buckingham* v. *Morrison,* 136 Ill. 437; *Andrews* v. *Stinson,* 254

id. 111; Ann. Cas. 1913B, 927.) In *Buckingham* v. *Morrison, supra,* it was held that a partner may by his will provide for a continuance of the partnership as an investment of the property and funds therein embarked, and his intention will control. The only question that has ever arisen has been whether the partnership is a continuation of the original partnership or a new one in fixing liabilities, and that question was considered in *Andrews* v. *Stinson, supra,* and this court followed the rule that the partnership is, in legal effect, a new one. That question is of no importance here. It being settled that the business of a partnership may be continued after the death of a partner as a new partnership, the question here is whether it was sufficient to name the estate of the deceased partner without giving the names of administrators, executors, heirs or devisees, and that is to be determined in the light of the present state of the law respecting partnerships. A partnership is recognized as a legal entity distinct from and independent of the persons composing it,—at least in respect to property. Its property is taxed to the partnership and belongs to it and not to the several partners. (*Doner* v. *Stauffer,* 1 P. & W. 198; *Richard* v. *Allen,* 117 Pa. St. 199.) No partner has any right in the firm property except that which remains after payment of all partnership debts. (*Chandler* v. *Lincoln,* 52 Ill. 74; *Rainey* v. *Nance,* 54 id. 29.) It is regarded as a distinct and separate entity from the individual partners under the Bankruptcy law, and may be adjudicated a bankrupt without any proceeding against the individual members. By the Practice act a partnership of which the members are not residents of the county where the business is conducted may be sued by the partnership name and service may be made upon any agent. (*Watson* v. *Coon,* 247 Ill. 414; *Joel* v. *Bennett,* 276 id. 537.) This is a distinct recognition of a partnership as a legal entity, and the property may be taken by a suit against it in the partnership name. Inasmuch as the funds and property of

a deceased partner may be continued in the business and the representatives of the estate sustain the relation of partners, and in common acceptation the estate is a partner, we do not regard it as essential that the names of those who would be entitled on the settlement of the partnership affairs should be named. The ownership of the property was sufficiently alleged.

The court did not err in overruling the motion to quash and in arrest of judgment.

Instruction No. 5 given at the instance of the People is complained of. By it the jury were advised that the claim of the plaintiff in error that he was forced to do the act should have the careful consideration of the jury, and if the jury believed beyond all reasonable doubt, from all the evidence in the case, that he did not do the acts charged in the indictment through fear or by reason of force used but with the intent and purpose of committing a burglary, they should find him guilty. This instruction would have been erroneous if the participation and the burglary had not been admitted and testified to by the plaintiff in error himself, but as applied to the case it was not incorrect.

Complaint is made of the refusal to give instructions Nos. 3 and 4 asked by the plaintiff in error, but they were of the same character as nine instructions given devoted to the law concerning reasonable doubt. The court did not err in refusing them.

The judgment is affirmed.        *Judgment affirmed.*

THOMPSON, DUNN and DUNCAN, JJ., dissenting:

The indictment is insufficient. Burglary is an offense against property, and in a prosecution for burglary the indictment must allege, and the proof must show, that the property burglarized was that of a person or persons other than the accused. This indictment charges plaintiff in error with breaking and entering the "store building of James A. Hendricks and the estate of H. H. Morgan, deceased,

operating under the firm name of Morgan & Hendricks."
An estate is not a natural person, an artificial person, or any
other entity that may be the owner of property. (*State
v. Hammons,* 226 Mo. 604; *Beall* v. *State,* 53 Ala. 460;
3 Bishop on New Crim. Proc. sec. 139.) If the partner-
ship, Morgan & Hendricks, was the owner or the lessee
of the store building at the time of the death of Morgan,
then the property passed to Hendricks on the death of
Morgan by virtue of section 89 of an act in regard to the
administration of estates, and for the purposes of an in-
dictment respecting the partnership property, before settle-
ment of the partnership business, ownership should be laid
in the surviving partner as the personal representative of
the partnership. After the partnership business is settled
the interest of the deceased partner passes to his personal
representative, heir, devisee or legatee, as the case may be,
and ownership should then be laid in all the individuals
comprising the partnership, naming them. (*Wallace* v. *Peo-
ple,* 63 Ill. 451; *Staaden* v. *People,* 82 id. 432; *Meadow-
croft* v. *People,* 163 id. 56; *People* v. *Stricker,* 258 id. 618;
*People* v. *Dettmering,* 278 id. 580; *People* v. *Picard,* 284
id. 588.) For aught that appears on the face of this in-
dictment the accused may have been the owner, in whole
or in part, of the store building as heir or devisee of
H. H. Morgan and may have had the possession of the
building and the lawful right of entry. It has been repeat-
edly held by this court that ownership of property against
which an offense is committed is a material averment in
an indictment for the offense and that it must be proven;
(*Aldrich* v. *People,* 225 Ill. 610; *People* v. *Struble,* 275 id.
162; *People* v. *Csontos,* 275 id. 402; *People* v. *DePaepe,*
281 id. 318;) and our decisions have fully established the
well recognized rule that such ownership must be laid in a
legal entity capable of owning property. (*People* v. *Bran-
der,* 244 Ill. 26; *People* v. *Krittenbrink,* 269 id. 244.) The
judgment should be reversed.