[No. 30957. Department One. June 17, 1949.]

*In the Matter of the Partnership Estate of J.* CHARLES PRINS *et al.*

LAWRENCE A. WESTERWELLER, *Individually and as Administrator, Appellant,* v. JOHN PRINS *et al., Respondents and Cross-appellants.*[1]

[1]Reported in 207 P. (2d) 909.

*D. V. & Lane Morthland,* for appellant.

*Medley & Haugland,* for respondents and cross-appellants.

MALLERY, J.—August 29, 1946, J. Charles Prins and Lawrence Westerweller, contemplating the establishment of an automobile agency, individually leased Yakima business property from one Mon Wai, the term to run for twenty years, commencing January 1, 1947. They agreed to construct a fifty thousand dollar building, according to plans then being prepared by architect George Bacon, on the premises within one year.

Having secured a Lincoln-Mercury franchise on September 16, 1946, they executed a written partnership agreement to sell and service automobiles in Yakima, each contributing ten thousand dollars to the capital of the partnership. Mr. Prins was to manage the office and accounting, and Mr. Westerweller the sales and general management of the business. Profits were to be divided equally. The partnership assumed the Mon Wai lease with its obligations.

The night before the partnership's public opening for business, October 4, 1946, Mr. Prins became ill and was hospitalized until his death on May 8, 1947. He participated in the business to the extent that he conferred at the hospital with the bookkeepers and with his partner. He instructed the bookkeepers that before the end of the fiscal year, the partnership books would require certain adjustments in order to properly reflect the true value of the business. He agreed with Mr. Westerweller that the partnership would be unable to build the fifty thousand dollar building required by the Mon Wai lease and that they should settle for the breach of the lease on the best terms that they could negotiate.

This case is concerned with the proceedings to wind up the partnership following Mr. Prins' death on May 8, 1947. Paragraph No. 10 of the partnership agreement provided as follows:

"10. If either partner shall die before the dissolution of this partnership, the surviving partner shall have the right and hereby obligates himself to purchase the interest of the deceased partner in the partnership. The purchase price therefore shall be one-half of the *net worth* of the partnership at the time of the deceased partner's death. Said net worth shall be ascertained by adjusting the last monthly balance sheet of the partnership business (prepared, certified and signed as provided in paragraph 8 above) so as to reflect such changes therein as shall have occurred in the ordinary course of business between the date thereof and the date of said partner's death, as shown by the partnership books of account. The surviving partner shall, within thirty days *after* the qualification of an executor or administrator of the deceased partner's estate, execute and deliver to such executor or administrator his promissory note, in the principal amount of said purchase price, payable within ninety days, bearing interest at the rate of five per cent per annum, secured by real and chattel mortgages upon all assets of the partnership. *Upon delivery of said note* and mortgages, neither the decedent, nor his heirs, executors, administrator or estate, shall have the right, title or interest in or to the partnership business or the property thereof, except the lien of said mortgages, and the surviving partner shall be the sole, complete and absolute *owner* thereof, subject to said mortgages." (Italics ours.)

Paragraph No. 8 of the partnership agreement required that each copy of the monthly balance sheet in triplicate be certified as correct and signed by each partner. It also provided that, if a partner should dispute the accuracy of the balance sheet, a certified public accountant "shall be employed" immediately to issue a balance sheet reflecting the "true financial condition of the partnership."

Section 42 of the Uniform Partnership Act, Rem. Supp. 1945, § 9975-81, provides as follows:

"Rights of Retiring or Estate of Deceased Partner When the Business is Continued. When any partner retires or dies, and the business is continued under any of the conditions set forth in section 41 (1, 2, 3, 5, 6), or section 38 (2b), without any settlement of accounts as between him or his estate and the person or partnership continuing the business, *unless otherwise agreed,* he or his legal representative

as against such persons or partnership may have the value of his interest at the date of dissolution ascertained, and shall receive as an ordinary creditor *an amount equal to the value of his interest* in the dissolved partnership *with interest, or,* at his option or at the option of his legal representative, *in lieu of interest, the profits attributable to the use of his right in the property of the dissolved partnership*: *Provided,* . . . " (Italics ours.)

It will be noted that the statute gives the legal representative of a deceased partner an option to share in the profits of the partnership business unless otherwise agreed between the partners. The partners here did agree, contrary to the terms of the statute, to the extent that the property should become the sole property of the survivor *upon delivery of a proper note and mortgage in payment of the deceased partner's interest.* Prior to such delivery, the terms of the statute are applicable. The question presented by this case is: When did the property become the sole property of the survivor?

The trial court held that this occurred upon November 5, 1947. The surviving partner, Westerweller, thereupon appealed and contends the trial court erred in not finding it to be when Prins died on May 8, 1947, or on July 14, 1947, at the latest.

The factual background touching this contention is that the survivor Westerweller closed the partnership books as of May 8, 1947. He hired a certified public accountant to adjust the books to reflect its net worth as of that date. They showed the net worth of the partnership as being $32,048.96, except for the unliquidated partnership liability for breach of the Mon Wai lease heretofore mentioned.

Thereafter, negotiations went forward to liquidate that liability, and, upon an understanding of what would be acceptable to Mon Wai and architect Bacon, Westerweller made an offer of settlement by letter on July 14, 1947, of $10,349.48 in cash. This amount was arrived at by anticipating the court's approval of a liquidation of the lease liability for $11,350 and subtracting one half of that from the accountant's former computation of one half the net worth

of the partnership business, excepting the lease liability. This offer of settlement by letter was refused. Subsequently, the court did approve the liquidation of the lease liability in the amount that had been anticipated.

Later still, and on November 5, 1947, Westerweller tendered delivery of a note and mortgage as provided for in the contract in the amount of $10,349.48 as payment for decedent's share of the partnership assets. The trial court found that to be the correct amount of one half the partnership's net worth as of the time of Prins' death, but in the court's decree, according to the statute, the option was given to the legal representative of the deceased to participate in the profits of the business up to the date of the tender of delivery of the note, to wit, November 5, 1947, as was provided for in the contract.

Appellant contends that this date was erroneous because his offer of July 14, 1947, should have been accepted, and that thereafter Prins' estate had no right to participate in the profits.

■ To this contention there are two sufficient answers. First, the contract provides that the surviving partner shall be the sole owner, *upon the delivery of said note and mortgage*. We do not think that a mere offer of terms for a settlement or anything less than the delivery or tender of a note and mortgage in the proper amount meets the requirements of the contract.

Secondly, we think the note and mortgage contemplated by the contract would be required to be in a definite and proper amount capable of present acceptance, and until the court had approved the liquidation of the lease claim there was no way in which the proper amount could be computed. We therefore hold that the trial court was correct in giving effect to the statute until the requirements of the contract had been met on November 5, 1947.

The respondent has cross-appealed. He assigns as error the holding of the court that the right of the legal representative of the deceased to share in the profits of the business terminated on November 5, 1947, and contends that the right continued to the time of judgment.

This court, in the case of *In re Randall's Estate,* 29 Wn. (2d) 447, 188 P. (2d) 71, in construing the right to share in the profits of the business given to the representative of a deceased partner, held that the statute permitted the partners to contract between themselves contrary to the provisions of the statute. Since, in the instant case, the contract provides that the surviving partner should be the sole owner upon delivery of the note in payment of the deceased partner's interest, we have no doubt that the statute was modified by their contract to the extent that the right to an option to participate in the profits of the partnership business terminated on the date found by the court, November 5, 1947.

The accounting system set up by the partners did not include *good will* as an item of value among the partnership assets. The cross-appellants concede that they are bound by this. However, they point out that neither was the Mon Wai lease liability carried on the books. Therefore, they contend in their brief that, if *good will* is to be excluded from the computation of net worth, so should the lease liability.

This contention, however, was specifically waived in oral argument at the time the case was submitted to this court. We are therefore not called to pass upon it. The findings of the certified public accountant are conceded to be according to standard accounting practices. The record supports the trial court's findings that they were correct.

The judgment is affirmed.

The contentions of neither party being sustained on this appeal, costs will not be allowed to either.

JEFFERS, C. J., BEALS, STEINERT, and HILL, JJ., concur.