In the Matter of the Estate of Adolph V.
Streck, Deceased.
Lutie E. Streck, Petitioner Below, Appellant, v. Clar-
ence H. Streck, Individually, and Clarence H.
Streck and First National Bank of Belleville, Co-
Executors of the Estate of Adolph V. Streck,
Deceased, Respondents Below, Appellees.

Gen. No. 62–F–12.

Fourth District.

May 18, 1962.

Rehearing denied June 17, 1962.

Pope & Driermeyer, of East St. Louis, for appellant.

Baltz & Guymon, and W. E. Ackerman, of Belleville, for appellees.

HOFFMAN, PRESIDING JUSTICE.

Three brothers, Ernest, Clarence and Adolph Streck, many years ago entered into a partnership to engage in the meat packing business in and about Belleville, Illinois. On January 31, 1928 the three brothers, together with their wives, executed a written partnership agreement which had as its object the making of a provision for the carrying on of the partnership in case of the death of one of the brothers. It was provided that the survivors had the right to purchase the interest of the deceased brother for the sum of $20,-000, which was to be exercised within one year after death.

This agreement was satisfactory to the partners until May 1, 1941 when, together with their respective wives, they entered into a new partnership agreement which was substantially similar to the first agreement except that it was provided that the option price should be the sum of $30,000.

Ernest Streck, the oldest brother, was the first to die, and this event occurred in 1942. He was survived only by his widow, and there was no disagreement amongst her and the surviving brothers as to the carrying out of the partnership agreement. Shortly thereafter, the wife of Adolph Streck died and on August 18, 1945 Adolph married the appellant herein, Lutie Streck. On November 7, 1945 she affirmed the second partnership agreement by signing the following:

> "Having married Adolph Streck on the 18th day of August, 1945, I hereby join in, assent to and covenant to bind myself, my heirs and assigns by all the terms of the above and foregoing partnership contract dated May 1, 1941, having leisurely read the same and knowing the contents thereof."

On January 30, 1951 the two surviving brothers, Clarence and Adolph, entered into a new partnership agreement, which was likewise signed by their wives, and which was essentially the same as the prior agreements except that the option payment was increased to the sum of $60,000. On August 28, 1954, Adolph Streck died leaving his spouse, the appellant Lutie Streck, surviving and leaving a will which contained the following provision:

"The partnership agreement in existence known as 'Streck Brothers,' located and doing a packing business in Belleville, Illinois, I direct shall be binding upon my estate, and the partnership agreement shall be carried into effect by all parties interested in my estate."

A further provision in Adolph's will was as follows:

"Should the surviving partner elect to pay out my share in the partnership in full at any time, or upon a dissolution of said partnership at any time, my said share shall be paid to such persons as may be in existence at that time, namely: My wife, Lutie Streck; my nephews, Wilfred Geissler and Clarence Streck, Jr., and my nieces, Dorothy Jean Geissler and Dorris Tuominen."

This obviously applied to the following provision in the partnership agreement:

"It is further covenanted and agreed that should any one or more of the parties hereto die, the remaining and surviving partner shall have the right, privilege and option to purchase, the interest of the partner so dying at the sum of Sixty Thousand Dollars, to be exercised within one year after the death of such partner, and with the further right to extend said option for a great-

476

er period than one year by the payment to the persons designated in the will of the partner so dying, and in the absence of such designation, to the heirs, of the sum of Twenty-Four Hundred Dollars . . ."

Adolph Streck's will was admitted to probate on September 29, 1954 in the probate court of St. Clair County and Clarence H. Streck, his surviving brother, was appointed coexecutor with the First National Bank of Belleville. Appellant, Lutie Streck, renounced her husband's will on July 19, 1955. On August 30, 1955 the coexecutor bank filed a petition in the probate court for authority to accept the payment of $60,000 tendered by Clarence H. Streck on August 26, 1955 pursuant to the aforesaid partnership agreement. Appellant Lutie E. Streck filed an answer to said petition and objected to it on the grounds that the partnership agreement was void and unenforceable. At the time the probate court considered this matter it also heard objections filed by petitioner to the first report of the bank. The probate court found that the partnership agreement was valid and binding and directed that the payment of $60,000 should be accepted; it also found that Clarence H. Streck, the surviving partner, was liable to the deceased partner's estate for the estate's proportionate share of income earned by the business during the period from the date of Adolph Streck's death until the date Clarence H. Streck exercised his option to purchase the deceased partner's interest.

Both of these orders were confirmed upon trial de novo in the Circuit Court. The appellant, Lutie E. Streck, appeals to this court questioning the order finding that the partnership agreement is valid and binding, and the respondent, Clarence H. Streck, individually, cross appeals challenging the validity of the order

directing him to account for income earned during the period from the death of his brother until the time he exercised his option to purchase the business.

Prior to a discussion of the aforesaid order we must dispose of a motion to dismiss this appeal which was filed in this court by the nephews and nieces of Adolph Streck. They allege that, under Supreme Court Rule 34, they were entitled to notice of this appeal, that they received no notice, that they would be adversely affected by any reversal or modification of the decree appealed from, and that, therefore, this appeal should be dismissed. We ordered the motion to be taken with the case. Our result which follows, now renders this motion moot and it is dismissed.

In attacking the partnership agreement, Lutie Streck relies upon four points which we will consider in the order presented.

First, it is argued that the agreement is so vague, ambiguous and uncertain that the contract is unenforceable. For authority, she cites principally the cases of Westphal v. Buenger, 324 Ill 77, 154 NE 426; Banks v. Gregory, 16 Ill2d 227, 157 NE2d 12, and London v. Doering, 325 Ill 589, 156 NE 793. These cases support the rule that in order for a contract to be specifically enforced the terms must be clear and precise. None of these cases, however, lend any factual support for a holding that the partnership agreement in this case was vague. The Westphal case involved a real estate contract providing for a mortgage for part of the purchase price, but the due dates and terms of the mortgage were uncertain. In the London case the contract for the sale of real estate didn't state the kind of deed which was to be delivered, the amount of the encumbrance, nor the rate of interest to be charged. In the Banks case, the contract sued upon provided that a nephew was to come to Chicago and "look after" his aunt. These cases have little significance here.

The widow here contends that the agreement was vague because it was for a term of 20 years without stating what the situation would be if both partners died within the 20 years. Further, she argues the agreement contains no provision for continuing the partnership after the death of either partner. No authority is cited by her to support the conclusion that this is fatal to the agreement.

We fail to see any merit in this argument. The agreement expressly stipulated that the parties wanted to provide for carrying on the partnership by the survivor in case one died. It further provided that the survivor could purchase, at his option, the interest of the one first dying for the sum of $60,000 to be exercised within one year. The surviving partner was given the sole management of the business during the time he was to exercise the option. These provisions are clear to us. There is no element of uncertainty about the language or the terms used. It was put through the test when the first brother died and apparently no problems of uncertainty arose at that time which caused any concern.

■■ Secondly, the widow argues, the agreement is so unjust and unfair that the court, in its sound discretion, will not aid in its enforcement. On this proposition, she cites principally Koch v. Streuter, 232 Ill 594, 83 NE 1072; Bailer v. McCarthy, 317 Ill App 215, 46 NE2d 105 and Morse v. Seibold, 147 Ill 318, 35 NE 369. These cases support the rule that a court will not specifically enforce an unconscionable contract. In the Koch case, one party to the contract was to get a $25,000 farm while the other was to get, in exchange, a farm having little equity, if any, over an encumbrance. In the Bailer case, an incompetent lady gave up a secured $7,500 note for an unsecured $1,000 note by the same maker. In the Morse case, the court held a buyer guilty of laches when he waited over 6 years

to bring suit on a contract. In that case the seller couldn't give good title and had offered the return of the purchase price several years before the suit for specific performance was brought. In the interim, the land had doubled in value. These cases of hardship are easily distinguishable from the case at hand.

Here was a contract entered into between 3 brothers, 30 years before this suit was brought. The contract was reviewed twice, the last time on January 30, 1951. The parties at that time had been in business together for over 20 years and had both known the business, its assets and its potential. They had been through the situation of one partner's death prior to the time they last reviewed the agreement in 1951. Nothing in this case points to any overreaching or any undue hardship. There is no indication of any conduct which would render the dealings unconscionable. It was as fair to one as to the other.

■ It has been previously held that a partnership agreement was valid which provided that upon the death of a partner the survivor would become the sole owner to the exclusion of the estate of the decedent. Lynch v. Ilg, 348 Ill App 545, 109 NE2d 362. See also Jones, Adm. v. Schellenberger, 225 F2d 784. There thus seems to be no valid reason why partners cannot contract to transfer their share to the other for an agreed price, especially where there is no lack of mutuality and no unconscionable conduct is indicated.

■ ■ The third attack made by the widow on the agreement is that the agreement is contrary to public policy and should not be enforced. The clause specifically deemed to be in contravention to the public policy was one which provided in substance that if anyone brought the surviving partner into court, in any proceeding, the share or shares of such person would be forfeited to the surviving partner. There is ample

authority to support the position taken that such a clause is invalid as against public policy. Agreements whose object is to oust the jurisdiction of the courts are contrary to public policy and void. 12 ILP Contracts, sec 177, p 342, 12 Am Jur, Contracts, sec 186, p 689, Beuttas v. U. S., 60 FS 771. But this does not conclude the validity of the entire agreement.

In Ehlers v. Ehlers, 259 Ill App 142, a provision in a trust agreement by a husband for the support of his wife providing that if either party should file for a divorce the trustee should pay the trust property to the wife was held to be void as being against public policy. But the Court went on to hold that this provision was severable from the rest of the agreement and might be disregarded. In Pelc v. Kulentis, 257 Ill App 213, it was pointed out that when there was more than one covenant and one was illegal, the legal can be enforced and the illegal disregarded, unless the 2 are so mingled and bound together that they cannot be separated. See also 12 Am Jur, Contracts, sec 220, p 737. This makes sound law.

■ The clause here attacked by the widow is not involved in this litigation. No forfeiture is being asked. To destroy the entire agreement because of this one clause would make the law a technical monster. No authority is cited by the widow which holds that such a clause would void the entire contract.

■ The fourth contention of the widow is that, assuming the contract valid, it nevertheless shouldn't be enforced because the surviving partner, Clarence H. Streck converted the assets to his own use eight months before he exercised his option. In support of this, she points out that the survivor took sole possession of the assets, converted to his own use all the profits of the partnership after Adolph died, and on January 1, 1955 formed a new partnership with his son and daughter.

In support of this last proposition, she relies heavily on Russell v. McCall, 141 NY 437, 36 NE 498, where the surviving partner took possession of the firm assets, continued the business for 2 months and then formed a new partnership. The personal representative was paid nothing. The Court said the surviving partner was guilty of a breach of trust because his duty was to wind up the business and dispose of the assets. The suit was for an accounting, and it is clear that the estate was entitled to one. No option agreement was involved and the case is not in point. In Thompson v. Parnell, 81 Kan 119, 105 P 502, cited by the widow, where there was an option agreement, the option was never exercised. Thus, it likewise is not authority for the court to invalidate this option agreement. It may well be that Clarence H. Streck, the surviving partner, had no authority or right to make any personal use of the assets prior to the time he exercised his option, and perhaps by appropriate action he could have been restrained from doing so. Yet, it does not follow that he thereby lost his privilege to purchase the decedent's share at the contract price. Any loss sustained by the estate because of his conduct is properly recoverable in an appropriate action.

■ It is generally true in the ordinary case that the surviving partner has a duty to wind up the affairs of a partnership and he cannot convert the business to his own use. However, this does not mean that partners are powerless to provide by contract for the continuation of the business and purchase of the decedent's share.

We therefore hold that the order of the Circuit Court appealed from, finding the partnership agreement of January 30, 1951 to be valid and binding and further finding that Clarence H. Streck, having paid the sum of $60,000 to the executors of the Estate of Adolph V.

Streck, has fully complied with all terms and conditions of said agreement, should be affirmed.

■ We come now to the cross-appeal of the defendant Clarence H. Streck wherein he complains of that part of the court's decree requiring him to account for the estate's share of the profits earned in the business between the time Adolph died and the time Clarence exercised the option to purchase—a period of approximately one year. The agreement itself is silent on the right to the profits accruing between death and the exercise of the option.

■ The general rule is that a surviving partner is accountable to his co-partner's legal representatives for profits made subsequent to death through employment of the partnership assets or in continuation of the business. This general rule is supported by overwhelming authority. (See 80 ALR 15, supplemented in 55 ALR2d 1391.) It rests upon the equitable policy that one should not profit from the use of another's property. Support, in Illinois, for this rule, is contained in Ligare v. Peacock, 109 Ill 94, Douthart v. Logan, 190 Ill 243, 60 NE 507 and Altschuler v. Altschuler, 410 Ill 169, 101 NE2d 552. Further support is found in the Uniform Partnership Act, Ill Rev Stats, chap 106½, sec 42.

The general rule above set forth has been applied to the option-purchase situation found in the instant case. See: Keyes v. Hurlbert, 43 Cal App 497, 11 P2d 447; In re Prins' Estate, 33 Wash2d 831, 207 P2d 909.

The surviving partner here used his deceased brother's estate until he exercised his option. Up to that point, the decedent's interest in the partnership was continued in use by the survivor pursuant to the partnership agreement and subject to all the resulting risk of such use. The deceased partner's estate should be entitled to the gain.

483

Accordingly, we affirm that part of the Circuit Court's decree wherein it ordered that Clarence H. Streck, as surviving partner, make an accounting to the Probate Court of St. Clair County of the profits of the partnership from August 28, 1954 to August 26, 1955 and that he pay over to the executors of the Estate of Adolph V. Streck, deceased, the estate's share of the profits for said period.

Affirmed.

CULBERTSON and SCHEINEMAN, JJ., concur.