*In re* ESTATE OF EDMUND JOHNSON, Deceased (Wendell Johnson *et al.*, Ex'rs of the Estate of Edmund Johnson, Plaintiffs and Respondents-Appellees, v. LOIS V. JOHNSON *et al.*, Defendants and Petitioners-Appellants and Cross-Appellees (Wendell Johnson, Respondent-Appellee and Cross-Appellant)).

Fourth District   No. 4—83—0520

Opinion filed May 9, 1984.—Rehearing denied January 7, 1985.

Leonard T. Flynn, of Franklin, Flynn & Palmer, of Champaign, and Stanley B. Balbach, of Balbach, Fehr & Lindley, of Urbana, for appellants.

Terry E. Eckhardt, of Benz & Eckhardt, of Gibson City, for appellees Wendell Johnson and George Bauer.

Richard T. West, of Follmer, West & Erdmann, of Champaign, for appellee Wendell Johnson, individually.

JUSTICE TRAPP delivered the opinion of the court:

Defendants, Lois and Steven Johnson, appeal from an order granting in part a petition filed by George Bauer and Wendell Johnson, executors of Edmund Johnson's estate, and a motion for summary judgment filed individually by Wendell Johnson. At issue is the construction of a partnership agreement. Wendell Johnson cross-appeals, alleging the trial court erred in refusing to strike an untimely filed jury demand.

In 1942, Edmund Johnson and his brother, Wendell, became partners in a business known as Johnson & Johnson, which previously had been operated by their uncle. The partnership handled insurance, real estate, and a loan business. In 1943, the brothers reduced their partnership agreement to writing. Article XII of the agreement originally stated:

"In event of the death of either of said partners, the interest of the deceased partner shall immediately become the property of the surviving partner, and the surviving partner shall have the right to continue to operate the business under the partnership name, and shall, upon the death of said partner, become liable and indebted to the estate of the deceased partner for the sum of Five Hundred Dollars ($500.00), which shall be in full satisfaction of the interest of the deceased partner in the partnership business, property, assets, and in full of all demands from the estate, the executor, administrator, heirs, devisees or legatees of said deceased partner for the interest of such deceased partner, and shall cover all credits and property of every kind and character the deceased partner may have in the partnership business; in other words, the right of those

claiming by or under the deceased partner to have and recover from the surviving partner in the sum of Five Hundred Dollars ($500.00)."

On September 11, 1953, the brothers amended article XII by substituting $5,000 for the $500 sum.

On July 23, 1965, the brothers again amended article XII to read as follows:

"Upon the death of either partner, all interest of the deceased partner shall immediately be and become property of the surviving partner, and the surviving partner shall have the right to continue to operate the business as a sole proprietorship under the partnership name. In lieu of said partnership interest, the surviving partner shall be and he is hereby obligated to pay to the estate of the deceased partner the sum of $7,500.00 plus the amount, if any, payable to the deceased Partner, as shown by all ledger sheets for accounts of said deceased Partner with the partnership. Said payment shall be in full satisfaction for the interest of the deceased partner in the partnership business, property, and assets, and in full of all demands by the estate of said deceased partner, his executors, administrators, heirs, devisees, legatees, successors, or assigns.

It is agreed that payment of said sum shall be an accounting in full to the executor or administrator of the estate of the deceased partner, for all interest of said deceased partner, and the surviving partner shall be relieved of any obligation for filing an inventory of the assets of the partnership in the Probate Court in which Letters are issued on the estate of the deceased partner."

In the final amendment of article XII, on June 24, 1971, the brothers substituted $10,000 for the $7,500 sum.

Besides the partnership business, both brothers maintained individual business interests. Edmund had a separate life insurance, appraisal, and income tax business. While he reported income from this business on his individual tax returns rather than partnership returns, records for the separate business were kept on the partnership ledgers. Wendell had comparable accounts kept on the partnership ledgers.

Edmund died on May 6, 1980, and was survived by his wife, Lois, and son, Steven. In accordance with his will, George Bauer and Wendell became the executors of Edmund's estate. Wendell paid the estate $10,000 plus an additional $20,963.60 for Edmund's individual business and partnership interests.

On March 26, 1981, Lois filed a petition asking for proof of Wendell's right to purchase Edmund's partnership interest for $10,000. On April 27, 1981, Lois amended her petition and requested a jury trial. The executors filed a petition requesting the court to approve and confirm Wendell's payment as full and complete payment in compliance with article XII. Wendell later moved for a summary judgment on the same ground. At a hearing on June 16, 1983, Wendell moved to strike the jury demand as untimely filed. The court denied this motion.

On June 28, 1983, the trial court granted in part and denied in part both the executors' petition and Wendell's motion for summary judgment. The court approved and confirmed the payment of $10,000 by Wendell as full satisfaction of any obligation he had under article XII to purchase Edmund's partnership interest. The court reserved ruling on whether the $20,963.60 represented full satisfaction of Edmund's nonpartnership business interests handled on the partnership books. The court further entered an express written finding that there was no reason to delay enforcement or appeal of its order. 87 Ill. 2d R. 304(a).

Defendants contend the trial court erred in holding that payment of $10,000 was sufficient to purchase the entire value of Edmund's interest in the partnership. They point out that Wendell received the entire goodwill of the business because he can continue to operate it under the name Johnson & Johnson. There is no valid reason, however, why partners cannot contract to transfer one partner's interest to the other for a set price, especially where no lack of mutuality or unconscionable conduct is present. (*In re Estate of Streck* (1962), 35 Ill. App. 2d 473, 480, 183 N.E.2d 26, 30-31.) Partners may also provide by contract for the continuation of the business along with the purchase of the deceased partner's interests. *Keller v. Keller* (1972), 4 Ill. App. 3d 89, 280 N.E.2d 281.

A partnership is controlled by the terms of the agreement under which it is formed. (*Harmon v. Martin* (1947), 395 Ill. 595, 612-13, 71 N.E.2d 74, 83.) Because a partnership is a contractual relationship, the principles of contract law fully apply to it. (*Allen v. Amber Manor Apartments Partnership* (1981), 95 Ill. App. 3d 541, 549, 420 N.E.2d 440, 446.) In construing an agreement, the court's primary objective is to ascertain the intent of the parties as evidenced by the language used. If the terms are unambiguous, then the intent of the parties must be ascertained solely from the words used; the agreement is not rendered ambiguous simply because the parties fail to agree upon its meaning. *Schoeneweis v. Herrin* (1982), 110 Ill. App. 3d 800, 806, 443

N.E.2d 36, 41.

The issue, therefore, is whether the partnership agreement is ambiguous. Ambiguity is a question of law for the court to decide. *URS Corp. v. Ash* (1981), 101 Ill. App. 3d 229, 233, 427 N.E.2d 1295, 1299.

Defendants assert article XII of the partnership agreement is ambiguous. Specifically, they contend the phrase "plus the amount, if any, payable to the deceased Partner, as shown by all ledger sheets for accounts of said deceased Partner with the partnership" creates an ambiguity. Defendants give conflicting interpretations to the phrase. At trial and in their briefs, they contended the brothers had intended to require the surviving partner to pay the deceased's estate $10,000 plus the value of the deceased's interest in the partnership, including the value of goodwill. At oral argument, they maintain the $10,000 represented payment for goodwill, but the survivor still had to pay for the deceased's capital interest in the partnership.

Plaintiffs contend the phrase plainly refers to accounts of the partners' individual business interests which were kept on the partnership books. They argue the agreement does not call for valuation of partnership assets, and the $10,000 fixed sum represents an easily ascertainable amount that allows the survivor to continue to operate the business.

Defendants first point to the third sentence in article XII, which says that surviving partner's payment shall be in full satisfaction of the deceased's interest in the partnership business. They conclude the payment is only for the partnership interest and cannot include nonpartnership interest. Besides being in full satisfaction of a partner's interest in the partnership, however, the third sentence also states the payment shall be "in full of all demands by the estate of said deceased partner." This would include nonpartnership interest kept on the partnership books.

Defendants contend other articles of the agreement establish the partners' intent to require the survivor to pay the entire value of the deceased's partnership interest. Article X states:

> "Before either partner shall sell his interest in the partnership, the same shall be offered to the other partner or member of the firm, at the price the partner expects to sell his interest, and the other partner given a chance to purchase the same before any sale is made to an outsider."

Therefore, a partner had to pay the market value of the other's interest to buy him out during his lifetime. Defendants assert the same price should be paid at a sale caused by a partner's death. They conclude, therefore, the $10,000 figure is a minimum, not a fixed, price.

Article X, however, was included in the original agreement. Under that agreement, a partner could purchase the deceased partner's interest for a flat sum. The brothers clearly differentiated between an *inter vivos* sale and a sale after a partner's death. The price for each sale was not to be calculated in an identical manner, as defendants suggest.

Defendants rely mainly on article VI to support their claim that an ambiguity exists. Article VI states:

> "The capital of the business consists of the value of the goodwill of the partnership and the value of the partnership business in commissions which has been worked up by the industry of the two partners."

Defendants maintain the brothers intended to increase the capital of the partnership as the goodwill increased. Because this increased capital and goodwill are not included in any other section of the agreement, defendants contend they must be included in calculating the value of a deceased partner's interest under article XII, or article VI is rendered meaningless. Plaintiffs, on the other hand, assert that article VI fixed the capital of the partnership on June 2, 1943, at the value of commissions and goodwill generated prior to that date. In reducing the partnership agreement to writing, plaintiffs contend it became necessary to state the partnership capital.

Defendants again ignore the fact that article VI was drafted into the original agreement. Under that agreement, a partner could purchase a deceased partner's interest for a fixed sum. Capital or goodwill, therefore, could not be included in article XII until the 1965 amendment. Following defendants' argument, capital increased with the value of goodwill between 1943 and 1965 for no reason because it was not included in any other section of the agreement. Under defendants' interpretation, article VI was meaningless until 1965. We reject defendants' interpretation because it is presumed parties do not insert meaningless words and phrases into contracts. *In re Estate of Savage* (1979), 73 Ill. App. 3d 656, 659, 392 N.E.2d 263, 266.

Finally, defendants argue the $10,000 represents a fixed sum for the value of goodwill only. They maintain the phrase "accounts of said deceased partner" refers to the partner's share of the partnership capital. The partnership ledger sheets, however, could not show the firm's capital as payable to a deceased partner. Capital is partnership property, and thus it belongs to the partnership, not the individual partners. (*People v. Zangain* (1921), 301 Ill. 299, 304, 133 N.E. 783, 785.) A partner's interest in the partnership is his share of the profits and surplus. (Ill. Rev. Stat. 1981, ch. 106½, par. 26.) Capital, there-

fore, is payable only to the partnership, not to the individual partners.

■■ The partnership agreement is not ambiguous. Article XII refers to accounts of the deceased partner with the partnership and not to partnership accounts. Although evidence extraneous to the agreement is necessary to determine the value of these accounts, the agreement clearly refers to accounts of a partner's individual business interests. Defendants are in effect asking for the payment of $10,000 plus one-half of the value of the partnership. To determine the value of the partnership, they desire an accounting of the partnership assets. Yet the second paragraph of article XII states the survivor is relieved of any obligation to account for the partnership assets. Rather, the partners intended the surviving partner to purchase the deceased's partnership interest for a flat sum of $10,000.

■■ Defendants concede their jury demand was not timely filed. When not timely filed, the party waives a jury. (Ill. Rev. Stat. 1981, ch. 110, par. 2—1105.) In order to obtain an extension of time in which to file a jury demand, a good cause for failure to comply with the statute must be shown. (Ill. Rev. Stat. 1981, ch. 110, par. 2—1007; 87 Ill. 2d R. 183.) The absence of prejudice or inconvenience alone does not establish good cause. (*Greene v. City of Chicago* (1978), 73 Ill. 2d 100, 107, 382 N.E.2d 1205, 1209.) The moving party must assert an independent ground for allowance of the late jury demand. (*Kren v. Payne* (1980), 81 Ill. App. 3d 283, 285, 401 N.E.2d 19, 21.) Once the party has established good cause, the decision of whether to allow a late jury demand is left to the sound discretion of the trial court. *Hernandez v. Power Construction Co.* (1978), 73 Ill. 2d 90, 97, 382 N.E.2d 1201, 1204.

Defendants asserted no independent ground for allowance of the late jury demand. Instead, the trial court noted there had been a change in counsel. This change in counsel, however, had occurred prior to the filing of defendants' original petition. The court also doubted anyone had realized the scope of the dispute when the petition had originally been filed. Apparently, however, defendants recognized the scope 32 days later when they filed their jury demand. Misapprehension of facts and mistake, as well as lack of diligence, does not amount to good cause for failure to comply with this statute (*Kren v. Payne* (1980), 81 Ill. App. 3d 283, 286, 401 N.E.2d 19, 22), nor does inadvertence of counsel. (*Greene v. City of Chicago* (1978), 73 Ill. 2d 100, 108, 382 N.E.2d 1205, 1209.) The trial court abused its discretion in granting the untimely filed jury demand without a showing of good cause.

For the foregoing reasons, the order of the trial court granting in part plaintiffs' petition and motion for summary judgment is affirmed. The order refusing to strike the jury demand is reversed, and the cause is remanded to the trial court.

Affirmed in part, reversed in part, and remanded.

MILLS, P.J., and WEBBER, J., concur.