## THE AMERICAN CENTRAL RAILWAY COMPANY

*v.*

## ELISHA MILES.

1. USURY—*whether pleadable by a corporation.* Under the interest law of 1853, a corporation cannot interpose the defense of usury in any action.

2. RAILROAD DIRECTORS — *of their compensation.* The law does not imply a promise on the part of railroad companies to pay their directors for services as such, and to enable a director to recover for such services, a by-law, or resolution, must have been adopted by the board to compensate him therefor.

3. PARTIES—*in suits to recover indebtedness due a firm.* In all cases of indebtedness to a partnership firm, the action must be brought by the members of the firm,—one of the members cannot sue alone, and recover at law for what his co-partners may agree to be his portion of a debt due the firm.

4. NEW PROMISE—*by a re-organized railroad corporation.* Where the property and franchises of a railroad corporation have been sold and conveyed under a deed of trust given to secure a debt of the company, and the purchasers re-organize, to prove a new promise by the re-organized company to pay a debt owing by the company as originally organized, there must be shown some action on the part of the directors of the former from which the promise can be clearly inferred. The mere certificate of their secretary that the amount was due on specified items, would be insufficient to prove a new promise, or to bind the company, unless it appeared he had been empowered to adjust the claim.

APPEAL from the Circuit Court of Mercer county; the Hon. ARTHUR A. SMITH, Judge, presiding.

The opinion states the case.

Messrs. GOUDY & CHANDLER, for the appellants.

Mr. T. G. FROST and Mr. I. N. BASSETT, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This was an action of assumpsit, brought by appellee, in the Mercer circuit court, against appellants, on a promissory note, and on an account. The declaration contained special counts on the note, and the usual common counts. The plea of the general issue was filed, and a trial was had by the court, a jury having been waived by the parties, by consent. After hearing the evidence, the court found the issues for the plaintiff, and assessed his damages at $3,037.69, and rendered a judgment in his favor for that sum. To reverse which, defendants prosecute this appeal and assign various errors on the record.

· On the trial in the court below, the parties agreed upon this statement of facts :

" 1st. That on or about the 29th day of March, 1860, the plaintiff advanced, at the request of the American Central Railway, the sum of three hundred and twelve dollars and fifty cents, and that the note, a copy of which is appended to the declaration herein, was given by Robert C. Schenck, then the president of said railway, in its behalf, and with due authority from his company, and that said note may be used in evidence on the trial, subject to such defense as the defendants may be able to interpose.

" 2d. It is agreed that plaintiff acted for three years as one of eleven directors of the American Central Railway, his services in that behalf ending about the year A. D. 1859, but the question as to whether, in any event, the plaintiff would be entitled to recover anything for his services as such director, is a question for determination on trial.

" 3d. It is agreed that the claim of the plaintiff of twelve hundred and fifty dollars, for work and labor done for the American Central Railway in grading, grows out of a contract entered into between the said railway, on the one part, and Olof Johnson & Co. of the other, for grading said road ; that under said contract about $20,000 worth of grading was done, and that the plaintiff was one of said company of Olof Johnson

& Co., and would be entitled to the said amount of $1250 as his share of such work due upon an account stated between the parties; but the question is submitted for decision on trial whether, in any event, the plaintiff would be entitled to sever himself from his co-contractors and claim his share or interest in the joint claim in an action in his own name. But it is agreed that said claim existed prior to the year 1859.

" 4th. It is further agreed that the American Central Railway was originally organized by virtue of an act of the Legislature of the State of Illinois, approved February 9, 1853, incorporating the Western Air Line Railroad Company, and the subsequent acts amendatory thereof.

" 5th. The liability of the defendants for either or all of the claims of the plaintiff is to be determined upon the foregoing facts, together with such documentary and other testimony as may be introduced by either party."

It appears that on the 25th of June, 1859, the railway company executed a deed of trust, or mortgage, to secure the sum of $2,790,000, bearing interest payable semi-annually, with power to sell the franchise and property thus pledged in case default should be made in the payment of principal or interest. Fifty-two bonds of $1000 each were issued, and default in payment of interest was made, and the franchise and property were sold and conveyed to James S. Thompson and others, on the 10th of May, 1865. After this sale was made, on the 1st of July following, the purchasers met and reorganized the company, and fixed the capital stock, elected directors and other officers, and provided for issuing stock or bonds for certain debts that existed against the corporation before the sale, but it does not appear that they were liens on the property.

It is claimed by appellants that by the sale of the franchise and property, the creditors at and previous to that time lost all claim against the franchise, property, or the company as it was reorganized; while the other side claims that his

previous rights remained unimpaired, because, as he claims, the old corporation was unaffected by the sale, or if it was, then he claims that the new organization is liable by express and implied promises.   It is admitted that the company, before the sale, were liable for the principal of the note, but as it drew 15 per cent interest, nothing but the principal could have been recovered.   They deny, however, that the company were ever liable to pay appellee $700, as a compensation for services as a director in the company.   And as to the $1250, they insist that, as it was his part of a sum due the firm of which he was a member, the claim could not be so divided as to enable appellee to sue in his own name and recover the amount.

We shall proceed to determine whether the claim of appellee could have been enforced against the company as at first organized, in the name of appellee, by an action at law, and if not, whether the new organization can do any act to render them liable.

The act of 1857, regulating interest (Gross' comp. title Int. sec. 2), fixes the rate at which parties may contract, at ten per cent per annum ; and the third section of the same act declares that if any person or corporation shall contract to receive a greater rate of interest than ten per cent per annum upon any contract, verbal or written, such person or corporation shall forfeit the whole of the interest so contracted to be received, and shall only be entitled to receive the principal sum due.

But the act of 1853 (Gross' comp. title Int.), by the first section, declares that " No corporation shall hereafter interpose the defense of usury in any action."   This section, therefore, and not the act of 1857, governs this note.   It was given by a corporation, and it is expressly prohibited from interposing the defense.   It was, therefore, with the interest, a valid claim against the company first organized.

The doctrine is announced in Redfield on Railways (1st ed.) 406, that in England and this country railway directors can not recover compensation unless allowed by a by-law in the

12—52ND ILL.

former, or by resolution in the latter, and several authorities are referred to, which sustain the rule.

As to appellee's share of the sum due the firm of which he was a member, we are aware of no rule of pleading or practice which will authorize a recovery by an individual member of a firm in his own name on what his partners agree is his share of a debt due the firm. In all cases of indebtedness to a firm, the action must be brought by the members of the firm; nor does an agreement to divide the claim among themselves change the right. The debt is due the members of the firm jointly, and unless it be a negotiable instrument, the debt cannot be assigned at law, either in whole or in part, to one member of the firm. It then follows that appellee's interest in that claim against the company was only equitable, and the legal title was vested in the members of the firm, and they could alone sue and recover at law.

As to the item of two hundred dollars for money advanced, we fail to find any evidence except the certificate of the secretary. This was therefore improperly allowed by the court, unless the claim is proved by the secretary's certificate.

The evidence shows that it was agreed by those who purchased under the deed of trust, that in the event they should become the purchasers of the road and franchises, when sold, they would issue stock to themselves for the amount the company owed them, and to all creditors of the road having just claims upon the company, if they would present their claims in a reasonable time. The purchasers thus manifested a willingness to discharge the debts of the corporation in that mode, and to place the holders of the just claims on the same footing with themselves. But it cannot be inferred from this that they intended to pay them money. The purchasers seem to have carried out this arrangement among themselves, and had appellee been disposed to avail himself of this arrangement, he could, in all probability, have obtained stock on all just indebtedness he held against the company.

All of his items of indebtedness, if just, formed a sufficient consideration to support a new promise by the company as at present organized ; and appellee insists that a new promise was made, but that is denied by appellants.   That is a fair question for the jury ; and inasmuch as the case will be passed upon by another jury, we deem it unnecessary to discuss the evidence which we find was conflicting on this question.   But to prove a new promise, it would be necessary to show some action on the part of the directors from which the promise, or thier liability, can be clearly inferred.   The mere certificate of their secretary that the amount was due on specified items would be insufficient to prove a new promise or to bind the company, unless it were shown that he had been empowered to adjust such claims generally, or this one particularly.

If the partners of appellee settled with him and found his share of the debt due them from the company, and authorized him to collect his share from the company, and the directors agreed to pay it in stock, and then refused to do so, it then became payable in money, or if they agreed to pay him in money, he may recover.

As the law does not imply a promise on the part of railway companies to pay their directors for services as such, it should appear that a by-law or a resolution of the board had been adopted to compensate them for services, before a director can recover.   This seems to be the rule deducible from the current of American authorities, and is analogous to the services rendered by any other character of trustees who, under the common law, are not entitled to compensation, and must look either to the statute or a contract for the right to receive pay for their services, and we are disposed to follow the rule.

For the errors indicated, the judgment of the court below is reversed and the cause remanded.

*Judgment reversed.*